ALLEN & OVERY LLP
Attorneys for BAE Systems (Funding One) Limited
Ken Coleman
1221 Avenue of the Americas
New York, New York 10020
Telephone (212) 610-6300

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NORTHWEST AIRLINES CORPORATION, *et al.,*<br><br><div align="right">Debtors.</div> | Chapter 11<br><br>Case No. 05-17930 (ALG)<br><br>Jointly Administered |
| GENERAL FOODS CREDIT CORP.,<br><div align="center">Appellant,</div><br><br><div align="center">v.</div><br><br>NORTHWEST AIRLINES CORPORATION,<br><div align="center">Appellee.</div> | Case. No. 07-7940 (SAS) |

**BRIEF OF APPELLEE BAE SYSTEMS (FUNDING ONE) LIMITED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I.     PRELIMINARY STATEMENT ............................................................... 1

II.    JURISDICTION ..................................................................................... 1

III.   STATEMENT OF THE CASE.................................................................. 2

       A.     Procedural Background................................................................ 2

       B.     BAE's and U.S. Bank's Proofs of Claim..................................... 2

       C.     GFCC's Objection ...................................................................... 5

IV.    ARGUMENT .......................................................................................... 7

       A.     The Bankruptcy Court Properly
              Interpreted The Operative Documents........................................ 7

       B.     A Hearing On An Objection To A Settlement
              Gives Rise To A Contested Matter And Afforded
              GFCC The Same Protections It Would Have
              Following An Objection To Its Claims......................................... 12

       C.     GFCC's Arguments Concerning The Effect
              Of The Stipulation On Any Potential Future Litigation
              Between The Parties Are Improper Because
              That Issue Is Not Before The Court............................................ 16

CONCLUSION...................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Bethlehem Steel Co. v. Turner Construction Co.*,
    2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)...........................................15

*Cosoff v. Rodman (In Re W.T. Grant)*,
    699 F.2d 599 (2d Cir. 1983),...................................................................................13

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
    889 F.2d 1274 (2d Cir. 1989)...................................................................................15

*In re Delta Air Lines, Inc.*,
    370 B.R. 552 (Bankr. S.D.N.Y. 2007)......................................................9, 10, 11, 12

*In re Iridium Operating LLC*,
    478 F.3d 452 (2d Cir. 2007).......................................................................................6

*In re John's Meat Emporium, Inc.*,
    176 B.R. 700 (Bankr. E.D.N.Y. 1995).......................................................................12

*In re Purofied Down Prods. Corp.*,
    150 B.R. 519 (S.D.N.Y. 1993)....................................................................................6

*In re Robinson*,
    368 B.R. 805 (Bankr. E.D. Ark. 2007) ...............................................................12-13

*In re Tower Air, Inc.*,
    268 B.R. 404 (Bankr. D. Del. 2001*)* .......................................................................13

*In re UAL Corp.*,
    346 B.R. 786 (Bankr. N.D. Ill. 2006) ........................................................................12

*In re U.S. Oil and Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ...................................................................................17

*Jones, Waldo, Holbrook & McDonough v. Wyoming Alaska Co.*,
    302 B.R. 113, 2003 WL 22535223 (10th Cir. B.A.P. 2003) .......................................12

*Kenton Cty. Bondholders Committee v. Delta Air Lines Inc. (In re Delta Air Lines, Inc.)*,
    --- B.R. -- 2007 WL 2435169 (S.D.N.Y. Aug. 27, 2007).............................................6

*Munford v. Munford, Inc.*,
    97 F.3d 449 (11th Cir. 1996) ........................................................................17

*Orion Pict. Corp. v. Showtime Networks, Inc. (In re Orion Pic. Corp.)*,
    4 F.3d 1095 (2d Cir. 1993) ...................................................................... 13-14

*P.W. Enters. v. Kaler (In re Racing Servs.)*,
    332 B.R. 581 (8th Cir. B.A.P. 2005) ...........................................................12, 13

*The Drexel Burnham Lambert Group v. Claimants Identified on Schedule 1*
*(In re Drexel Burnham Lambert)*,
    995 F.2d 1138 (2d Cir. 1993) ...............................................................16, 17, 18

*Velde v. First Intern'l Bank & Trust (In re Y-Knot Const., Inc.)*,
    369 B.R. 405 (8th Cir. B.A.P. 2007) ...........................................................14

*Welsch v. Hefren-Tillotson, Inc. (In re Devon Capital Mgmt., Inc.)*,
    261 B.R. 619 (Bankr. W.D. Pa. 2001) .........................................................16, 17

## STATUTES

28 U.S.C. § 158(a)(1) ......................................................................................1

28 U.S.C. § 1334 ............................................................................................1

Fed. R. Bankr. P. 7026 ..................................................................................13

Fed. R. Bankr. P. 7027 ..................................................................................13

Fed. R. Bankr. P. 9014 .......................................................................12, 15, 16

Fed. R. Bankr. P. 9019 .............................................................................1, 12

## OTHER AUTHORITIES

Alan N. Resnick & Henry J. Sommer eds., 10 Collier on Bankruptcy
(15th ed. rev. 2007) ......................................................................................12

# I.      PRELIMINARY STATEMENT

This appeal arises from the Bankruptcy Court's approval of a claim settlement between BAE Systems (Funding One) Limited ("BAE") and Northwest Airlines Corp ("NWA" or the "Debtor").  General Foods Credit Corporation ("GFCC") objected to the stipulation based on GFCC's allegation that it, rather than BAE, is entitled to a substantial portion of the claim that the stipulation allocated to BAE.  Thus, in addition to assessing the stipulation under Bankruptcy Rule 9019, GFCC's objection required the Bankruptcy Court to determine whether BAE was entitled to assert the claim that would be allowed by the stipulation.  GFCC also asserts that it was not afforded a fair opportunity to demonstrate its entitlement to a portion of the claim allowed to BAE and that the stipulation prejudiced its claim against NWA which has not yet been the subject of a claim objection.

The Bankruptcy Court's approval of the stipulation should be affirmed because

- the Bankruptcy Court correctly determined that BAE and NWA were entitled to compromise the claims based on the provisions of the operative documents,

- the contested matter initiated by GFCC's objection made available to GFCC all of the discovery devices and other protections GFCC alleges it was denied, and

- the Bankruptcy Court made clear that its decision was not a determination of GFCC's claims against NWA.

# II.      JURISDICTION

The District Court has jurisdiction over this Appeal pursuant to 28 U.S.C. §§ 158(a)(1) and 1334.

### III.    STATEMENT OF THE CASE

**A.    Procedural Background**

On May 17, 2007, Northwest Airlines Corp., a debtor ("NWA" or the "Debtor") in a chapter 11 case pending in the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Court"), No. 05-17930, entered into a stipulation resolving proofs of claim filed by BAE Systems (Funding One) Limited ("BAE") and U.S. Bank National Association as Indenture Trustee ("U.S. Bank") with respect to ten aircraft bearing FAA registration numbers N513XJ, N514XJ, N515XJ, N516XJ, N517XJ, N518XJ, N519XJ, N520XJ, N521XJ and N522XJ (the "Stipulation"). On July 3, 2007, General Foods Credit Corporation ("GFCC") filed an objection to the Stipulation (the "Objection") relating to aircraft bearing FAA registration numbers N513XJ through N517XJ. On July 16, 2007, NWA, BAE, and U.S. Bank filed responses to the Objection, to which GFCC replied on July 23, 2007. The Bankruptcy Court held a hearing on July 26, 2007, at which it was agreed by all parties that the Stipulation would be entered for aircraft bearing FAA registration numbers 518XJ through 522XJ. Such stipulation was so ordered on July 27, 2007, and is not the subject of the present appeal. With respect to the remaining five aircraft, N513XJ through N517XJ, the Bankruptcy Court held a hearing to consider the Objection on July 26, 2007 (the "July 26 Hearing"). By telephonic hearing held on July 27, 2007, the Bankruptcy Court overruled the Objection, and so ordered the Stipulation with respect to the aircraft with FAA registration numbers N513XJ through N517XJ which order was entered on July 31, 2007.

**B.    BAE's and U.S. Bank's Proofs of Claim**

The damages BAE and U.S. Bank asserted in their proofs of claim arose from NWA's rejection of separate leases of ten aircraft (one lease per aircraft), which leases were entered into

as part of ten leveraged lease transactions (the "Leases").  In the five transactions relevant to this appeal, BAE, as Lender, lent approximately 80% of the cost of the purchase of each aircraft, and GFCC as the equity participant invested 20% of such cost.  Separate trusts were established for the benefit of BAE and GFCC: Indenture Trusts for the benefit of BAE, and Owner Trusts for the benefit of GFCC. [1]  The Owner Trusts sought the financing for the acquisition for the aircraft, purchased the aircraft, and leased them to NWA.  The financing obtained by the Owner Trusts is governed by Trust Indentures. [2]

NWA's filing under chapter 11 of the Bankruptcy Code in September 2005, the rejection of the Leases and the failure to make payments under the Leases all constituted events of default under the Leases, and in turn, events of default under the Trust Indentures.  The Indenture Trustee foreclosed on the collateral under the Trust Indentures which were sold at public auction. No third party buyers attended the auctions, and BAE purchased the collateral by bidding in a portion of the debt.  As Lender, BAE had significant losses on each aircraft, but because the debt was non-recourse, BAE could not look to GFCC to make up the difference.

---

[1]     Typically, a leveraged lease transaction is comprised of several agreements among the parties, including a Lease between the Lessee (here NWA) and the Owner Trustee, a Trust Indenture between the Owner Trustee and the Indenture Trustee, and a Participation Agreement among all the parties.  The Trust Indentures, Leases, and Participation Agreements at issue here are collectively referred to herein as the "Operative Documents." Complete copies of a representative Lease, Trust Indenture, Participation Agreement and Tax Indemnity Agreement were attached as exhibits to NWA's Response to GFCC's Objection to the Stipulation dated July 16, 2007, and filed under seal.

[2]     GFCC's argument that it is not bound by the Trust Indenture is meritless.  As GFCC correctly identifies, the parties to the Trust Indenture are the Indenture Trustee and the Owner Trustee.  Appellate Brief of GFCC dated September 28, 2007 ("Appellate Br.") pg. 2-3.  These parties act on behalf of, and at the direction of, their beneficiaries, the Indenture Trustee for the Lender, the Owner Trustee for GFCC.  Thus, GFCC's claim that "it could not have mortgaged away its rights under the TIA" because it not a party to the Trust Indenture is likewise unfounded.  Appellate Br. pg. 19.

The collateral purchased by BAE at the auctions included the aircraft and the Owner Trustee's rights as Lessor under the Leases, including the right to collect damages from NWA for NWA's breach of the Leases.[3]  Under the Leases, Lessor is entitled to liquidated damages which are referred to as stipulated loss value ("SLV")[4].

SLV is a common liquidated damages provision in leveraged leasing transactions.  It is a substitute for the future rent under the lease preserving yield to the date of termination, taking into account unrecovered principal, and giving effect, in the case of the equity investors, to tax detriments (and corresponding future tax benefits) occasioned by the early termination.  Basic Rent payable prior to default is set in an amount sufficient to pay the normal debt service and provide a return to equity.  Likewise, SLV is set in an amount which includes a component equal to amounts due on the loan on the termination date and also includes two other components: (i) one reflecting the amount of cash the equity investor would otherwise expect to realize from the remaining portion of the lease (i.e., net cash flow from basic rent after satisfaction of periodic debt service) and proceeds of disposal of the leased property at lease end and (ii) the other reflecting the adverse tax consequences experienced by the equity investor by reason of the transaction terminating earlier than anticipated.  Despite there being a component that derives from losses the equity would have experienced, 100% of the SLV is pledged to secure repayment

---

[3]    U.S. Bank is the record holder of the proofs of claim filed with respect to damages arising from the breach of the lease on N513XJ.

[4]    SLV is defined in the Leases as: "'Stipulated Loss Value' with respect to the Aircraft as of any date through and including September 29, 2018, means, but subject always to the provisions of Section 3(d)(v) hereof, the amount determined by multiplying Lessor's Cost for the Aircraft by the percentage specified in Exhibit C hereto opposite the Stipulated Loss Value Date with respect to which the amount is determined (as such Exhibit C may be adjusted from time to time as provided in Section 3(d) hereof and in Section 7 of the Tax Indemnity Agreement).  Stipulated Loss Value as of any date after September 29, 2018 shall be the amount determined as provided in Section 19(a) hereof."

of debt and, only after debt is repaid, can the equity investor receive any portion of SLV. *See* Trust Indenture granting clause and at section 3.03.

Thus, BAE and the Indenture Trustee filed proofs of claim, one per aircraft, reflecting the Lessor's damages under the Leases—namely the SLV less the fair market value of the aircraft.

## C.    GFCC's Objection

GFCC argued below that the amount of the claim to be allowed BAE pursuant to the Stipulation is too high, because, in GFCC's view, SLV must be reduced from the scheduled amount to reflect payments that NWA must make to GFCC under separate, confidential agreements (one per transaction) between NWA and GFCC referred to as the Tax Indemnity Agreements (the "TIA"). Reply of GFCC dated July 23, 2007 ("GFCC's Reply Br.") pg. 2. Under the TIA, NWA agreed to indemnify GFCC for unexpected tax obligations in certain circumstances.[5] GFCC alleges that NWA's rejection of the Lease is such a circumstance, Appellate Br. pg. 5, and argues that under the Operative Documents NWA must make a TIA payment and then reduce SLV by the amount of such payment.

This allegedly mandatory reduction is necessitated to avoid by the purported risk to NWA of double payment (i.e. a payment to BAE and GFCC on the same obligation). Appellate Br. pg. 24. The possibility for "double payment" arises because NWA has an obligation (here to BAE) under the Leases to pay SLV - which has a component reflecting the equity's tax losses,

---

[5]    Tax Indemnity Agreements are confidential agreements between the lessee in a leveraged lease, and the owner participant. In addition to receiving basic rent on the aircraft, after the payment of debt service, the owner participant is entitled to depreciation and other tax benefits as a result of its ownership of the aircraft. The leveraged lease is a tax deferral vehicle by which the equity participant can take a large deduction for the aircraft now, and pay tax later. Because foreclosure of the aircraft is treated as a taxable event, GFCC could experience taxable gain, in addition to losing the right to take any further depreciation deductions, if any. While the existence of the agreement is referred to in the other Operative Documents, the tax indemnity agreement is kept confidential by the signatories thereto. Thus, to this day BAE has only seen the TIA agreement provided by GFCC in the course of this litigation.

and NWA has an obligation under the TIA to make a payment to the equity to compensate it for

its tax losses. However, this risk of double payment is illusory because, as the Bankruptcy Court

correctly held, the TIA eliminates the risk to NWA by providing that it had no obligation to

make a TIA payment to GFCC where NWA is paying SLV following an event such as NWA's

bankruptcy and rejection of the Leases. Transcript of telephonic hearing before Judge Gropper

dated July 27, 2007 ("July 27 Tr.") 13:5-8, 15:9-14. The Bankruptcy Court further correctly

determined that NWA will have "paid SLV" by making a distribution to BAE in accordance with

the Stipulation and NWA's Plan of Reorganization. July 27 Tr. 14:8-12.

     GFCC makes two principal arguments in support of its appeal. First, GFCC argues that

the Bankruptcy Court exceeded its authority by resolving the contested matter GFCC itself

created when it filed to Objection. Second, GFCC argues that the Bankruptcy Court improperly

interpreted the Operative Documents in determining that NWA's payment of SLV to BAE

eliminated NWA's obligation to make a payment to GFCC under the TIA. The Bankruptcy

Court's decision is reviewed for abuse of discretion. *In re Iridium Operating LLC*, 478 F.3d 452,

461 n. 13 (2d Cir. 2007); *Kenton Cty. Bondholders Committee v. Delta Air Lines Inc. (In re

Delta Air Lines, Inc.)*, --- B.R. ----, 2007 WL 2435169, at *4 (S.D.N.Y. Aug. 27, 2007); *In re

Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993). "The bankruptcy court will

have abused its discretion if no reasonable man could agree with the decision to approve a

settlement." *In re Delta Air Lines, Inc.*, 2007 WL 2435169, at * 4 (internal quotation and

citation omitted). Here, the Bankruptcy Court was well within its authority to resolve the

contested matter commenced by GFCC. Moreover, its interpretation of the Operative

Documents conforms to the plain language of the provisions, the economics of the transaction,

and prior case law in this District in connection with the *Delta* bankruptcy and the Northern

District of Illinois in connection with the *United* bankruptcy. There is no reported decision on the interplay between SLV and TIA obligations which supports GFCC. Because the Bankruptcy Court did not abuse its discretion, and for all the reasons set forth below, GFCC's appeal should be dismissed and the Bankruptcy Court's order approving the Stipulation should be affirmed.

## IV.  ARGUMENT

**A.    The Bankruptcy Court properly interpreted the Operative Documents.**

The Stipulation is fair and equitable and was properly approved by the Bankruptcy Court. There is no real dispute that BAE is entitled to payment from NWA, and that such payment is properly determined by SLV and the fair market value of the aircraft. The only dispute is the one raised by GFCC: whether the SLV should be reduced by the amount of payments purportedly due to GFCC on account of the Tax Indemnity Agreement.

The parties agree that two provisions of the TIA are relevant here - section 5 and section 7. GFCC Reply Br. pg. 2. GFCC would have the analysis start with section 7 which states, in pertinent part:

> SECTION 7.  <u>Adjustment of Stipulated Loss Values Termination Values and Special Purchase Price</u>. If any amount is required to be paid by Lessee under Section 4 hereof, Owner Participant will recompute the Stipulated Loss Value percentages and Termination Value percentages and Special Purchase Price with respect to the Aircraft to reflect such payment in accordance with the manner in which such values were originally computed or adjusted pursuant to Section 3 of the Lease, by Owner Participant, and shall certify to Lessee either that such values as set forth in the Lease do not require change, or as the case may be the new values necessary to reflect the foregoing recomputation, describing in reasonable detail the basis for computing such new values and upon such certification such new values shall be substituted for the value appearing in the Lease.

GFCC argues that a TIA payment is required to be paid as a result of NWA's rejection of the Leases. According to GFCC, NWA should make a TIA payment, adjust SLV to reflect that

payment, and then pay the reduced SLV to BAE. However, the Bankruptcy Court properly

concluded that no amount is "required to be paid by Lessee under Section 4" because section

5(c) of the TIA relieves NWA of the obligation to GFCC. July 27 Tr. 13:5-8, 15:5-14. Section

5(c) states in pertinent part:

> SECTION 5. Exceptions to Federal Tax Indemnification. *Notwithstanding anything to the contrary in this Agreement*, Lessee shall not be required to indemnify Owner Participant with respect to a Loss . . . to the extent such Loss. . .occurs as a direct result of one or more of the following events:
>
> (c) Any event as a result of which Lessee or any other person has paid Stipulated Loss Value or Termination Value, or paid the amount required to be the greater of the fair market value of the Aircraft and Stipulated Loss Value or Termination Value in accordance with the provisions of the Operative Documents except to the extent that such payment does not reflect the timing of the occurrence for Federal income tax purposes.

(Emphasis added). Because of GFCC's Objection, the Bankruptcy Court was required to

determine whether a TIA payment is required to be made under section 5 to determine whether

an adjustment is required under section 7. The unambiguous wording of the provisions makes

clear that section 5 takes precedence over section 7. GFCC conceded this. July 26 Tr. 47:17-19.

The parties agree that both the Loss (as defined in the TIA) and NWA's obligation to pay SLV

occurred as a result of NWA's bankruptcy and rejection of the Leases. Under section 5(c) when

the Loss occurs as a direct result of any event which also requires NWA to pay SLV, NWA is

not required to pay under the TIA. Because NWA will pay SLV pursuant to the Stipulation, if

approved, it is released from the obligation to pay under the TIA.

GFCC argues that section 5(c) does not apply because, pursuant to the Stipulation and

NWA's chapter 11 Plan SLV has not been paid "in accordance with the Operative Documents"

which GFCC argues means "in full". Appellate Br. pgs. 23-24. This argument fails for three

reasons. First a simple reading of the provision reveals that the "in accordance" language is part

of the clause that describes the different payments that the Lessee could make that would relieve

it of the obligation to pay under a TIA. Section 5(c) is triggered upon the payment of three different values: (i) SLV, (ii) Termination Value or (iii) the amount required to be the greater of the fair market value of the Aircraft and Stipulated Loss Value or Termination Value in accordance with provisions of the Operative Documents. GFCC would rewrite the provision to say: "(c) any event as a result of which Lessee or any other person has paid SLV in accordance with the provisions of the Operative Documents." However, it is clear from the text that "in accordance" does not modify "paid" but instead modifies the third method of establishing damages, in addition to SLV or Termination Value. Specifically, "in accordance with the Operative Documents" cannot be read to limit how payment of those damages must be made. GFCC's attempt to import the "in accordance" language to the prior clause distorts its clear meaning.

Second, the Bankruptcy Court in *Delta* explicitly rejected the argument that GFCC sets forth here. *In re Delta Air Lines Inc.* 370 B.R. 552 (Bankr. S.D.N.Y. 2007). In *Delta*, the Bankruptcy Court analyzed two TIA agreements to determine whether Delta had a double payment obligation in either instance.

In "Objection 1," (as identified by the court in *Delta*) , the section of the TIA which addressed the circumstances under which Delta would not be required to make a TIA payment is referred to as section 7 (analogous to section 5(c) in the agreement at issue in this case). In "Objection 1" section 7(c) stated:

> Notwithstanding any provision to the contrary contained in section 6 hereof, the Owner Participant shall not be entitled to any payment under section 6 or 8 hereof in respect of any Loss or any Foreign Tax Credit Loss [i.e. the indemnity for tax consequences] arising as a result of one or more of the following events:. . .
>
> (c) any event whereby a party to any of the Operative Documents is required to pay Stipulated Loss Value or Termination Value.

*Id.* at 558-59.  Although the owner participant argued that the provision was only meant to apply

where it had actually received its distribution through the distribution on default provision

contained in the trust indenture, the Court rejected that argument because it was clear that the

entirety of SLV had been pledged to secure the debt.  *Id.* at 559-60.  Unless the debt is paid in

full, the equity would receive nothing.  *Id.* at 559.

In "Objection 2", the section of the TIA which addressed the circumstance under which

Delta would not be required to make a TIA payment is referred to as section 6 (again analogous

to section 5(c) in the instant agreement).  *Id.* at 561.  In Objection 2, section 6(c) stated

> Notwithstanding any provision to the contrary contained in Section 5 hereof [setting forth
> the right to tax loss indemnification], the Owner Participant shall not be entitled to any
> payment under Section 5 hereof in respect of any Loss . . . arising as a result of one or
> more of the following events:
>
> (c) Any event whereby the Lessee pays Stipulated Loss Value or Termination Value or an
> amount determined by reference thereto, except to the extent that the calculation of the
> Stipulated Loss Value or Termination Value does not accurately reflect the timing of any
> such event for Federal income tax purposes.

*Id.*  There, the owner participant argued that the section was not triggered because it requires the

debtor to pay SLV in cash in full pursuant to the Operative Documents.  *Id.* at 562.  The

Bankruptcy Court rejected this argument and held,

> the word 'pays' . . . must be construed in such a manner as to comport with the meaning
> of payment in the context of bankruptcy, which the parties expressly contemplated in the
> TIA, as well as in the other agreements.  There is rarely likely to be full payment of
> claims in bankruptcy, and in the ordinary course of any Chapter 11 case payment of
> claims under a plan may be in cash or equity or debt securities of the debtor or a
> combination of cash and securities. . . .

*Id.*  Bankruptcy Judge Hardin continued,

> [t]he fact that . . .  the Lease expressly requires payment in U.S. dollars certainly
> demonstrates that the parties knew how to expressly provide for payment in U.S. dollars
> when that is what they intended.  But it does not support the argument that this provision

> . . . of the Lease should be exported to Section 6(c) of the TIA, which does not so
> provide.  Section 6(c) could have required payment in cash, but it does not.

*Id.*  Moreover, as Judge Gropper correctly noted, the Operative Documents are voluminous and contain many references to how various payments must be made.  July 27 Tr. 14:23-15:8.  GFCC can offer no textual support as to why any one of these provisions should be the one that is imported into the TIA.  The drafters of these agreements could have provided that SLV must be paid in full in cash before section 5(c) was triggered, but they did not, and that requirement should not simply be read into the agreement.

Finally, GFCC's reading of Operative Documents does not comport with the economics of the transaction.  Under the Operative Documents, the entirety of SLV, including that portion of SLV that was calculated by reference to the equity's tax losses (hereinafter the "SLV tax component") is pledged to the Indenture Trustee to compensate the debt in the case of default.  GFCC disputes this fact.  It argues that the SLV tax component must be separated out for the benefit of GFCC in the same way that payments made under the TIA are separated from SLV.  However, GFCC's argument is logically flawed.  Although SLV and TIA are both calculated using the equity's tax losses as a component, they are not identical or interchangeable.  These obligations arise under different agreements, with different counterparties, under different circumstances.  Thus, while payments made under the TIA may be "Excluded Payments" that are explicitly not collateral for the Lender, *see* Trust Indenture section 1.01 (definition of "Excluded Payments"), the entirety of any of SLV is pledged as collateral to the Lender.

All three courts that have considered this issue (two of which in actions prosecuted by GFCC), have concluded that SLV in its entirety is pledged to the Indenture Trustee.  *See In re Delta Airlines,* 370 B.R. at 559 ("[I]t is clear that the entirety of SLV, including the tax component and the owner participant's equity component, constitutes collateral security for the

indebtedness owed to the lenders.  The indenture trustee is entitled to pass on to the owner

trustee and thence to the owner participant only that portion of SLV, if any, which may remain

after the lenders have been paid principal and interest in full."); *In re UAL Corp.,* 346 B.R. 786,

789 (Bankr. N.D. Ill. 2006) (finding that GFCC assigned all of the cash flows under the lease

with United as security to the indenture trustee), *aff'd in part and rev'd in part on unrelated*

*grounds  sub. nom.  General Foods Credit Corp v. United Air Lines, Inc., (In re UAL Corp.),* 06-

4243, 2007 WL 256323 (N.D. Il. January 22, 2007).

The Bankruptcy Court's holding that no TIA payment is required under section 5(c) of

the TIA is amply supported by the clear and unambiguous provisions of the Operative

Documents and the case law, as well as the economics of the transaction.  Accordingly, the

appeal should be dismissed.

**B.**    **A hearing on an objection to a settlement gives rise to a contested matter and afforded GFCC the same protections it would have following an objection to its claims.**

GFCC argues that the "bankruptcy court in this case went far beyond its narrow mandate.

As a result, the court violated GFCC's right to have its TIA claim adjudicated under proper

procedure and a correct standard of evidence." Appellate Br. pg. 10.  GFCC is incorrect.  The

filing of an objection to stipulation of settlement under Rule 9019 creates a contested matter

under Rule 9014, and is not a summary proceeding.  *See* 10 Collier on Bankruptcy ¶9019.1 (Alan

N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007); *P.W. Enters. v. Kaler (In re Racing*

*Servs.),* 332 B.R. 581, 585 (8th Cir. B.A.P. 2005); *Jones, Waldo, Holbrook & McDonough v.*

*Wyoming Alaska Co.,* 302 B.R. 113, 2003 WL 22535223, at * 4 (10th Cir. B.A.P. 2003); *In re*

*John's Meat Emporium, Inc.*, 176 B.R. 700, 703 (Bankr. E.D.N.Y. 1995); *In Robinson,* 368 B.R.

805, 815-816 (Bankr. E.D. Ark. 2007); *In re Tower Air, Inc.*, 268 B.R. 404, 406 (Bankr. D. Del. 2001).[6]

In a contested matter, the parties are entitled to the rights of litigants in an adversary proceeding, including Rules 7026 and 7027 of the Federal Rules of Bankruptcy Procedure which give the parties the opportunity to engage in discovery. *In re Racing Servs.*, 332 B.R. at 585. In *In re Racing Servs,* the debtor's largest unsecured creditor objected to a stipulation between the chapter 11 trustee and the United States. Before a hearing was held, the bankruptcy court issued an order approving the settlement. The Eighth Circuit Bankruptcy Appellate Panel reversed, finding that it was an abuse of discretion to approve a settlement that has been objected to without a hearing.

Here when GFCC objected to the Stipulation it created a contested matter, and became entitled to additional rights under the Federal Rules of Bankruptcy Procedure such as discovery and an evidentiary hearing. Although it was entitled to, GFCC never sought any discovery and, apart from an affidavit filed with its papers, it did not seek to introduce any evidence at the hearing. The Bankruptcy Court spent a significant amount of time considering GFCC's arguments. Thus, unlike the creditor in *In re Racing Servs,* GFCC had an ample opportunity to present its position.

GFCC's citation to the Second Circuit's opinion in *Orion* misses the mark. *Orion Pict. Corp. v. Showtime Networks, Inc. (In re Orion Pic. Corp.)*, 4 F.3d 1095 (2d Cir. 1993). In

---

[6]     GFCC incorrectly cites to *Cosoff v. Rodman (In Re W.T. Grant)*, 699 F.2d 599, 608 (2d Cir. 1983), for the proposition that GFCC's objection could not have converted the settlement hearing into a contested proceeding. Appellate Br. pg. 14. In *W.T. Grant*, parties to an appeal from a stipulation withdrew the appeal when a subsequent order superseding the appeal was circulated. The Second Circuit held that the withdrawal of the appeal with prejudice was obviously not intended to prevent future objections to the future order. *Id.* at 608. The Court's discussion is wholly irrelevant to whether or not a contested proceedings arises upon the filing of an objection to a stipulation.

*Orion,* the debtor, Orion Pictures Corporation, sought to assume an executory contract with

Showtime Networks, Inc. and commenced an adversary proceeding against Showtime claiming

anticipatory breach of the agreement.  The contract had a "key-man" provision and Showtime

had notified Orion of its position that Orion had breached that provision.  The Bankruptcy Court

held a hearing on the motion to assume the contract and the adversary proceeding, and decided

that Orion had not breached the key-man provisions of the contract.  Thus, it approved the

motion to assume the agreement and dismissed the adversary proceeding without prejudice as

moot.  The District Court affirmed, but the Second Circuit Court of Appeals reversed.

The Second Circuit held that a motion to assume should be considered a summary

proceeding, and the adversary proceeding should not have been decided in the course of a motion

to assume.  More specifically "it was error for the bankruptcy court to decide a disputed factual

issue between the parties to a contract in the context of determining whether the debtor or trustee

should be permitted to assume that contract."  *Id.* at 1098.

Unlike a motion to assume, which is a summary proceeding, a hearing on an objection to

a stipulation is a contested matter, subject to the Bankruptcy Rules which govern adversary

proceedings.  Moreover, on an objection to a settlement stipulation, the standard of proof is the

"preponderance of the evidence" standard*.  Velde v. First Int'l Bank & Trust  (In re Y-Knot*

*Const., Inc.*) 369 B.R. 405, 408 (8th Cir. B.A.P. 2007) (citation omitted).  Thus, GFCC's

complaint that the Bankruptcy Court's determination was "a far cry from the preponderance of

the evidence standard [the debtor] would face in federal district court" again misses the mark.

Appellate Br. pg. 10 (citation omitted).

Further, GFCC's Objection required the Bankruptcy Court to interpret the Operative

Documents and determine whether a reduction of SLV was "required" by the TIA.  Under the

Operative Documents in order to determine whether a reduction was required (as described more fully herein) the Bankruptcy Court necessarily had to determine whether a TIA payment was due to GFCC. Thus, GFCC expressly put the provisions of the TIA at issue and thereby created a contested matter. GFCC could have sought discovery, or exercised any of the rights arising under Fed. R. Bankr. P. 9014, but it chose not to. Its decision not to exercise these rights does not give rise to any lack of due process.[7] GFCC had notice and actively participated in a substantive hearing that, as GFCC concedes, focused on GFCC's rights under the Tax Indemnity Agreement. Appellate Br. pg. 6. Far from exceeding its authority, GFCC's objection demanded that the Bankruptcy Court conduct a painstaking analysis. Accordingly, GFCC was not denied due process and its appeal should be dismissed.

---

[7]    GFCC objects that the Bankruptcy Court based its ruling on the "'basic structure of the transaction' [July 27 Tr. pg. 12] – a highly complex subject on which the court had received no evidence other than the operative documents themselves." Appellate Br. pg. 15. However, at the July 26 Hearing, GFCC agreed that the parties "didn't intend to create a situation where there would be a double payment on behalf of the lessor" and stated "[w]e still thought the documents control and work that conflict out. We believe the documents do have provisions, the provisions we're all focused on here, that prevented double payment; we should let those documents control." Transcript of the July 26 Hearing 44:5-14. Thus, GFCC agreed that the contracts resolve the dispute between the parties—and their language should control. It is axiomatic that "[i]f the terms of a contract are unambiguous, the obligations it imposes are to be determined without reference to extrinsic evidence." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). Moreover, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation. The court is not required to find the language ambiguous where the interpretation urged by one party would "strain[ ] the contract language beyond its reasonable and ordinary meaning." *Id.* at 1277 *(quoting Bethlehem Steel Co. v. Turner Construction Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590, 593 (1957)); *cf.* July 27 Tr. 11:15-20 (finding that GFCC's urged interpretation of the documents stretches the language of the TIA "beyond the breaking point"). Thus, GFCC's complaint that it lacked an opportunity to present evidence is specious at best.

**C.    GFCC's arguments concerning the effect of the Stipulation on any potential future litigation between the parties are improper because that issue is not before the court.**

Finally, GFCC argues that it was improperly prejudiced by the Bankruptcy Court's "specific findings about disputed provisions of the TIAs between [NWA] and GFCC." Appellate Br. pg. 7. As discussed herein, GFCC's objection required the Bankruptcy Court to determine whether a TIA payment was required to be made. GFCC cannot argue that the result is unfairly prejudicial merely because it is unhappy with it. The hearing was a contested matter initiated by GFCC's Objection, and the Bankruptcy Court was required to make such findings to resolve it. Fed. R. Bankr. P. 9014.

Moreover, Judge Gropper took care to be clear that he was not adjudicating GFCC's proofs of claim. The Bankruptcy Court explicitly said: ". . . the Court cannot deal directly with GFCC's proof of claim, and the parties are free to argue as to the effect of this decision on such proof or proofs of claim." July 27 Tr. 16:24-17:1. Judge Gropper was correct to leave the question of collateral estoppel to another day, because the effect of the Bankruptcy Court's decision on GFCC's future litigation was not before him, nor is it before this Court on appeal. That issue will become ripe if and when GFCC's claims are litigated.[8]

GFCC's citation to *Welsch v. Hefren-Tillotson, Inc. (In re Devon Capital Mgmt., Inc.)*, 261 B.R. 619 (Bankr. W.D. Pa. 2001) is inapposite. In *Devon*, the stipulation of settlement barred third parties from commencing actions against the debtors in connection with tainted securities actions with which the debtors were involved. *Id*. The Bankruptcy Court did not

---

[8]    GFCC's "motion" for an "order specifying that the bankruptcy court's findings and conclusions concerning the operative documents shall have no bearing and constitute no authority in any subsequent contested proceeding on GFCC's claim" is wholly inappropriate. Appellate Br. p. 18. Unless and until a subsequent contested proceeding is commenced, such interpretation is premature. *See e.g. The Drexel Burnham Lambert Group v. Claimants Identified on Schedule 1(In re Drexel Burnham Lambert)*, 995 F.2d 1138, 1146 (2d Cir. 1993).

approve the portion of the Stipulation prohibiting creditors from commencing actions against the

debtors, finding the bar order "too prejudicial" to the third parties, who were themselves

defendants in adversary proceedings commenced by the chapter 7 trustee.  In so holding, the

Bankruptcy Court diverged from the several contrary holdings of the Court of Appeals.  *See e.g.*

*In re U.S. Oil and Gas Litigation*, 967 F.2d 489, 495-496 (11th Cir. 1992); *Munford v. Munford*

*Inc.*, 97 F.3d 449 , 455(11th Cir. 1996) (Bankruptcy Court had "ample authority" to enter bar

order as against third parties).

  The facts in *Devon* bear no resemblance to the facts at issue here.  In *Devon*, the principle

debtor was an insolvent securities broker dealer involved in numerous tainted secured

transactions with the co-debtors.  The bar order in the stipulation there at issue released all

claims against him or the co-debtors in any way related to the tainted transactions.  *Id.* 620-621.

While the court there acknowledged that it could not conceive of what claims the third parties

could have, it was reluctant to release all conceivable claims, including for fraud or

misrepresentation.  *Id.* at 626.

  Here, unlike in *Devon*, the Bankruptcy Court explicitly held that the Stipulation did not

prevent any third party from asserting claims against the parties to the Stipulation.  July 27 Tr.

17:11-13.  In other words, the bar order that so concerned the Court in *Devon*, is absent from the

Stipulation.  The Stipulation is thus wholly distinguishable from the stipulation in *Devon*, and the

holding in *Devon* even on its facts is out of the mainstream.

  The facts here more closely align with *In re Drexel Burnham Lambert*, 995 F.2d at 1146-

1147.  In *In re Drexel Burnham Lambert,* third parties to a settlement appealed the approval of

settlement which they claimed was entered by the district court in an abuse of its discretion.  The

Second Circuit dismissed the appeal holding, *inter alia*, the District Court did not abuse its

discretion in approving settlement over the objections of third parties because "anyone wishing to object to the Global Settlement was allowed to present their views and all objections were considered before the district court issued its [order]." *Id.* at 1147. The Court found the settlement fair to all parties, not just the settling parties. Here too, GFCC had a full and fair opportunity to have its objection to the settlement heard, and the Bankruptcy Court found the Stipulation fair to all parties. Accordingly, the appeal should be dismissed.


## V.    CONCLUSION

The Stipulation was fair and reasonable to NWA's bankruptcy estate and the order approving it should be affirmed. In light of the clear and unambiguous provisions of the Operative Documents, the analogous holdings of other courts deciding this issue, and the economics of the transaction, the Bankruptcy Court's approval of the Stipulation was plainly not an abuse of discretion.

For all the foregoing reasons, BAE respectfully requests that this Court affirm the Bankruptcy Court's approval of the Stipulation and dismiss the appeal.


Dated: New York, New York          ALLEN & OVERY LLP
       October 18, 2007

                                   By:  /s/   Ken Coleman
                                        Ken Coleman
                                        1221 Avenue of the Americas
                                        New York, New York 10020
                                        Telephone (212) 610-6300
                                        Facsimile (212) 610-6399

                                        *Attorneys for BAE Systems (Funding One) Limited*