Richard Hiersteiner
Jeanne P. Darcey
Amy A. Zuccarello
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199-7613
617.239.0100

And

Shmuel Vasser
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, NY 10022
212.308.4411

*Counsel to U.S. Bank National Association, as Trustee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NORTHWEST AIRLINES CORPORATION, *et al.,*<br><br><div align="right">Debtors.</div> | Chapter 11<br><br>Case No. 05-17930 (ALG)<br><br>Jointly Administered |
| GENERAL FOODS CREDIT CORP.,<br><div align="right">Appellant,</div><br><br>v.<br><br>NORTHWEST AIRLINES, INC.<br><div align="right">Appellee.</div> | Case. No. 07-cv-7940 (SAS) |

**BRIEF OF APPELLEE U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE**
**TRUSTEE WITH RESPECT TO AIRCRAFT BEARING U.S. REGISTRATION N513XJ**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................... 1

II.    SUMMARY OF THE ARGUMENT ................................................................. 1

III.   STATEMENT OF JURISDICTION.................................................................. 2

IV.    STANDARD OF REVIEW ............................................................................... 3

V.     STATEMENT OF THE CASE.......................................................................... 3

VI.    ARGUMENT ..................................................................................................... 5

       A.    THE BANKRUPTCY COURT ACTED WITHIN ITS AUTHORITY IN
             APPROVING THE STIPULATION. ................................................................ 5

             1.  The Settlement Hearing was a Contested Matter........................................ 5
             2.  The Bankruptcy Court adhered to all applicable standards for approval of the
                 Stipulation. ................................................................................................. 7

       B.    THE BANKRUPTCY COURT PROPERLY CONSTRUED THE
             OPERATIVE DOCUMENTS. ......................................................................... 12

             1.  GFCC is not entitled to payment of damages under the Leases, unless
                 and until the Secured Certificates have been paid in full........................... 12
             2.  GFCC's proposed adjustment to SLV is not authorized under the
                 Operative Documents.................................................................................. 16
             3.  The Trustee's Claim is calculated as of the Petition Date. ........................ 18
             4.  GFCC's distinction between its "equity investment" and its
                 "indemnification rights" is without merit. ................................................. 19

VII.   CONCLUSION................................................................................................... 21

BOS111 12210867.1

# TABLE OF AUTHORITIES

## Cases

*In re Adelphia Communications Corp.,*
    359 B.R. 54 (Bankr. S.D.N.Y. 2006) ........................................................................ 7

*In re Adelphia Communications Corp.,*
    327 B.R. 143 (Bankr. S.D.N.Y. 2005) ...................................................................... 8

*In re Bennett Funding Group, Inc.,*
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) ...................................................................... 7

*Citibank, N.A. v. Vebeliunas,*
    332 F.3d 85 (2d Cir. 2003) ...................................................................................... 3

*In re Dean,*
    359 B.R. 218 (Bankr. C.D. Ill. 2006) ...................................................................... 6

*In re Delta Air Lines, Inc., et al,*
    2007 WL 1462207 (Bankr. S.D.N.Y. 2007) .......................................................... 16

*In re Drexel Burnham Lambert Group, Inc.,*
    960 F.2d 285 (2d Cir. 1992) .................................................................................. 10

*In re Energy Coop., Inc.,*
    886 F.2d 921 (7th Cir. 1989) .................................................................................. 9

*In re Frost Bros., Inc.,*
    91 Civ. 5244, 1992 WL 373488 (S.D.N.Y. Dec. 2, 1992) ...................................... 3

*General Foods Credit Corp. v. United Air Lines, Inc. (In re UAL Corp.),*
    No. 06-4243, 2007 WL 256323 (N.D. Ill. January 22, 2007) ................................ 16

*In re Ionosphere Clubs, Inc.,*
    156 B.R. 414 (S.D.N.Y. 1993) .............................................................................. 10

*In re Iridium Operating LLC,*
    478 F.3d 452 (2d Cir. 2007) .................................................................................... 3

*In re Iridium Operating LLC,*
    No. 01 Civ. 5429, 2005 WL 756900 (S.D.N.Y. April 4, 2005) .............................. 3

*In re Johns-Manville Corp.,*
    340 B.R. 49 (S.D.N.Y. 2006) .................................................................................. 3

*In re Khachikyan,*
    335 B.R. 121 (9th Cir. B.A.P. 2005) ...................................................................... 6

*In re Liu,*
    166 F.3d 1200 (2d Cir. 1998)........................................................................................ 3

*Nellis v. Shugrue,*
    165 B.R. 115 (S.D.N.Y. 1994)................................................................................ 8, 10

*Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc., (In re Int'l Distrib. Ctrs., Inc.)*
    103 B.R. 420 (S.D.N.Y. 1989).................................................................................. 8, 9

*In re Orion Pictures Corp.,*
    4 F.3d 1095 (2d. Cir. 1993)................................................................................... 10, 11

*In re Paysour,*
    313 B.R. 109 (Bankr. E.D.N.Y. 2004).......................................................................... 7

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
    390 U.S. 414 (1968)........................................................................................................ 8

*In re Purofied Down Prods. Corp.,*
    150 B.R. 519 (S.D.N.Y. 1993)............................................................................. 3, 9 ,10

*In re Tower Automotive Inc.,*
    241 F.R.D. 162 (S.D.N.Y. 2006) ............................................................................... 11

*In re UAL Corporation, et al,*
    346 B.R. 783 (Bankr. N.D. Ill. 2006) .................................................................... 18, 19

*In re W.T. Grant Co.,*
    699 F.2d 599 (2d Cir. 1983).............................................................................. 8, 9, 10

## Rules

Fed. R. Bankr. P. 7001 ....................................................................................................... 6

Fed. R. Bankr. P. 7026 ....................................................................................................... 7

Fed. R. Bankr. P. 7052........................................................................................................ 7

Fed. R. Bankr. P. 8001(a) ................................................................................................... 3

Fed. R. Bankr. P. 8002(a) ................................................................................................... 3

Fed. R. Bankr. P. 8013 ....................................................................................................... 3

Fed. R. Bankr. P. 9014........................................................................................................ 6, 7

Fed. R. Bankr. P. 9019(a) ................................................................................................ 7

Fed. R. Civ. P. 52 ............................................................................................................ 7

## Treatises

10 *Collier on Bankruptcy*
   9014.02 (Lawrence P. King ed. 15th ed. 1997) ........................................................ 6

James C. Ahlstrom, et al., "The Economics of Leveraged Leasing," in Ian Shrank & Arnold G.
   Gough Jr., eds., *Equipment Leasing-Leveraged Leasing* 4th ed........................................ 19, 20

## Statutes

11 U.S.C. §365 ............................................................................................................... 18

11 U.S.C. §512 ............................................................................................................... 18

28 U.S.C. §157 ................................................................................................................. 2

28 U.S.C. §158 ................................................................................................................. 3

28 U.S.C. §1334 ............................................................................................................... 2

BOS111 12210867.1

# I. INTRODUCTION

General Foods Credit Corporation ("GFCC") appeals the Bankruptcy Court's approval over its objection of the *Stipulation Resolving Claim Nos. 10995, 10996, 10997, 10999 and 12216 Relating to Aircraft N513XJ, N514XJ, N515XJ, N516XJ, and N517XJ* (the "Stipulation")[1]. (So Ordered Stipulation, App. Des. at Tab 7).[2] Having been overruled, GFCC now argues that the Bankruptcy Court exceeded its authority in doing so. Yet, by filing and pressing its objection (the "Objection") to the Stipulation, GFCC squarely put at issue its contractual rights against Northwest Airlines, Inc. ("Northwest") and required that the Bankruptcy Court undertake the very review that it now complains about on appeal. (Objection, App. Des. at Tab 2). The analysis by the Bankruptcy Court was invited by GFCC, was appropriate under the rules governing compromises of controversies in bankruptcy and the Bankruptcy Court's conclusions were unequivocally correct.

# II. SUMMARY OF THE ARGUMENT

A.    The Stipulation sets forth a compromise of the claims of U.S. Bank National Association, as indenture trustee, (the "Trustee") and BAE Systems (Funding One) Limited ("BAE") under certain aircraft leases that were rejected by Northwest during its chapter 11 proceedings. GFCC objected to the Stipulation as unreasonable because, in GFCC's view, the claims allowed to the Trustee and BAE under the Stipulation were inflated and at least $30 million of those claims belonged to, and should instead be allowed to, GFCC under certain Tax Indemnity Agreements (the "TIAs") between GFCC and Northwest. (TIA, Reorganized

---

[1]  The Stipulation originally involved five additional claims arising under five additional aircraft leases in which GFCC did not have an interest and as to which no party had filed an objection. At the hearing on the approval of the Stipulation, the parties agreed to bifurcate the Stipulation and the claims that had not been objected to were allowed.
[2]  References to the Statement of Issues on Appeal and Designation of Items to be Included in the Record on Appeal are noted throughout as "App. Des. At Tab __."

Debtors' Response to Objection, App. Des. at Tab 4, Exhibit D). Although the Stipulation by its terms settled only claims of the Trustee and BAE for rejection of leases assigned to the Trustee, GFCC argued that an undefined portion of those claims was reserved for it under the TIAs. By so doing, GFCC required the Bankruptcy Court to make a determination whether such amounts were properly allowed to the Trustee or BAE under the Operative Documents, or to GFCC under the TIAs. GFCC should not now be heard to complain that the determination it invited was unauthorized simply because it does not like the result.

B.      In fact, the review by the Bankruptcy Court was circumspect, its analysis unassailable, and approval of the Stipulation was the right result. The clear and unambiguous language in the Operative Documents provides that allowance of a claims for lease rejection damages based on Stipulated Loss Value ("SLV"), upon which the Trustee's and BAE's claims are based, must at all times be in an amount sufficient to pay the outstanding debt in full, notwithstanding – and without regard to – any purported adjustments to SLV that GFCC claims are required by the documents. Accordingly, even if GFCC could establish grounds for an adjustment to lower SLV, which it cannot, a condition to such adjustment is that it cannot reduce the amounts due to the Trustee and BAE below the amount required to pay the outstanding debt in full.

### III. STATEMENT OF JURISDICTION

The Bankruptcy Court had jurisdiction over this matter pursuant to 28 U.S.C. §157 and § 1334. On July 31, 2007, the Bankruptcy Court entered the order approving the Stipulation (the "Order") that is the subject of this appeal. (So Ordered Stipulation, App. Des. at Tab 7). The Order is a final order under 28 U.S.C. § 158.

Pursuant to 28 U.S.C. § 158(a) and Rules 8001(a) and 8002(a) of the Bankruptcy Rules, GFCC filed its notice of appeal which was docketed as Case No. 07-cv-07940. This Court has jurisdiction over the appeal of the Order pursuant to 28 U.S.C. § 158(a)(1).

## IV. STANDARD OF REVIEW

The Court reviews the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error. *Citibank, N.A. v. Vebeliunas,* 332 F.3d 85, 90 (2d Cir. 2003); *In re Johns-Manville Corp.,* 340 B.R. 49, 58 (S.D.N.Y. 2006); *see also* Fed. R. Bankr. P. 8013. A bankruptcy court's finding pursuant to Bankruptcy Rule 9019 that a settlement is reasonable is reviewed for abuse of discretion. *In re Iridium Operating LLC,* 478 F.3d 452, 461 n. 13 (2d Cir. 2007); *In re Purofied Down Prods. Corp.,* 150 B.R. 519, 522 (S.D.N.Y. 1993); *see also In re Liu,* 166 F.3d 1200, 1200 (2d Cir. 1998) (bankruptcy court's approval of settlement is reviewed "extremely deferentially"). Thus, a bankruptcy court's determination that a settlement is reasonable should not be overturned unless it is manifestly erroneous or constitutes an abuse of discretion. *See In re Iridium Operating LLC,* No. 01 Civ. 5429, 2005 WL 756900, at *4 (S.D.N.Y. April 4, 2005). A bankruptcy court will have abused its discretion if "no reasonable man could agree with the decision" to approve a settlement. *In re Frost Bros., Inc.,* 91 Civ. 5244, 1992 WL 373488, at *4 (S.D.N.Y. Dec. 2, 1992) (internal quotation marks omitted).

## V. STATEMENT OF THE CASE

At all relevant times, the Trustee served as indenture trustee under the aircraft financing transactions for each of the aircraft (collectively, the "Aircraft") addressed by the Stipulation and, in connection therewith, filed proofs of claim with respect to each such aircraft financing. Currently, the Trustee holds only the claim relating to Aircraft N513XJ, however, the parties have agreed that the Operative Documents relating to all of the Aircraft contain virtually

identical provisions and the arguments set forth herein would therefore apply to the Aircraft, and this appeal, as a whole.

The acquisition of the Aircraft was financed by an owner trust through issuance of loan certificates (the "Secured Certificates") to one or more lenders, and the grant to the Trustee acting for the benefit of such lenders of (i) first liens on, and prior security interests in, the Aircraft, including, without limitation, the airframe, engines, other equipment, logs and records; and (ii) assignments of all of the lessor's right, title and interest in and to the respective leases for the Aircraft to Northwest (collectively, the "Leases"), pursuant to Trust Indenture and Security Agreements (collectively, the "Indentures", and together with the Secured Certificates, the Leases and those certain Participation Agreements executed in connection therewith, collectively, the "Operative Documents"). (Lease, Indenture and Participation Agreement, Reorganized Debtors' Response to Objection, App. Des. at Tab 4, Exhibits A, B and C, respectively). According to GFCC, at the same time, Northwest and GFCC entered into certain TIAs to provide an indemnity to GFCC for tax losses in certain specified circumstances. Neither BAE nor the Trustee are parties to any of the TIAs and, in fact, were not provided copies of any such TIA agreement until the Objection was filed.

On September 14, 2005 (the "Petition Date"), Northwest, its parent, Northwest Airlines Corporation and several of their affiliates (collectively, the "Debtors") filed voluntary petitions under chapter 11 of the United States Bankruptcy Code, 11 USC §§ 1101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). By order dated March 7, 2006, Northwest rejected the Leases for the Aircraft and, as a result thereof, on or about August 15, 2006, the Trustee filed, among others, claims for damages arising from the rejection of the Leases.

On or about May 16, 2007, the Debtors, the Trustee and BAE entered into the Stipulation. The Stipulation provides for the allowance of the claims of the Trustee and/or BAE, as the case may be, arising from the rejection of the Leases of the Aircraft, in agreed-upon amounts as a predicate to receiving distributions on account of such claims under the Debtors' First Amended Joint and Consolidated Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan")[3]. On July 3, 2007, GFCC filed the Objection to the Stipulation and on July 23, 2007 filed a Reply to the various Responses to its Objection. The Bankruptcy Court held a hearing on the Stipulation on July 26, 2007 (the "Settlement Hearing"). GFCC actively participated in the Settlement Hearing. On July 27, 2007, the Bankruptcy Court overruled GFCC's Objection and the Stipulation was entered as so approved on July 31, 2007. (Transcript of July 27, 2007 hearing, App. Des. at Tab 11).

## VI. ARGUMENT

### A. THE BANKRUPTCY COURT ACTED WITHIN ITS AUTHORITY IN APPROVING THE STIPULATION.

#### 1.    The Settlement Hearing was a Contested Matter.

The Bankruptcy Court clearly had the authority to approve the Stipulation and rule on all disputed issues at the Settlement Hearing, including all matters raised by GFCC in its Objection. GFCC's main contention was that the agreed-upon amounts in the Stipulation were not properly allowed to the Trustee or BAE under the Operative Documents, because such amounts were properly due to GFCC under the TIAs. Further, GFCC asserted that, even if such amounts were allowable to the Trustee and BAE, such allowance should not affect any claims of GFCC,

---

[3] The Effective Date (as defined in the Plan) occurred on May 31, 2007, and distributions on account of allowed claims are being made by the Debtors. No distributions on account of the claims subject to the Stipulation will be made until such claims become allowed claims for purposes of the Plan.

including its claims under the TIAs.

Once the Objection was filed, it is clear that the Settlement Hearing became a "contested matter". Under Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") "any matter involving adversary parties not covered by Rule 7001 is a contested matter." *In re Dean*, 359 B.R. 218, 221 (Bankr. C.D. Ill. 2006); Fed. R. Bankr. P. 9014 (Norton et al., eds., 2006) (Editor's Comment) ("If there is opposition to the relief requested, whether by motion or application or notice, the resulting proceeding thereafter must be considered a contested matter."); Fed. R. Bankr. P. 7001; Fed R. Bankr. P. 9014. Whenever there is an actual dispute that is not an adversary proceeding, the litigation to resolve that dispute is a contested matter. Fed. R. Bankr. P. 9014 Advisory Committee's Note; *see* 10 *Collier on Bankruptcy* ¶ 9014.02 (Lawrence P. King ed. 15th ed. 1997) ("Collier").

While in some respects[4] a contested matter employs a streamlined procedure compared to an adversary proceeding, the parties nevertheless have a full opportunity to establish and support their positions in the dispute. *See* Fed. R. Bankr. P. 9014(c); *In re Khachikyan*, 335 B.R. 121, 125 (9th Cir. B.A.P. 2005). GFCC contends that it was deprived of the opportunity to present evidence to demonstrate that its interpretation of the Operative Documents is the correct reading. Brief of Appellant, General Foods Credit Corporation (hereafter, "GFCC Appeal Brief") at 10. Yet, the Bankruptcy Court had the Operative Documents, and GFCC admitted that the Operative Documents control the Court's analysis. (Transcript of July 26, 2007 Settlement Hearing, p.44, App. Des. at Tab 10). At, and in the time leading up to, the Settlement Hearing, GFCC had the opportunity to take discovery and to take testimony regarding contested material factual

---

[4] In a contested matter, there is no summons and complaint, pleading rules are relaxed, counterclaims and third-party practice do not apply, and much pre-trial procedure is either foreshortened or dispensed with in the interest of time and simplicity.

disputes, if there were any, in the same manner as in an adversary proceeding. Fed. R. Bankr. P. 9014(c); *see In re Adelphia Communications Corp.* 359 B.R. 54, 56 (Bankr. S.D.N.Y. 2006); *In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.*"). Bankruptcy Rule 9014 generally makes the discovery rules of the Federal Rules of Civil Procedure 26- 37 applicable to contested matters. Fed. R. Civ. P. 26- 37, *incorporated by* Fed. R. Bankr. P. 7026 - 37 & 9014(c). Moreover, the Bankruptcy Court was required to make findings of fact and conclusions of law before entering its Order that has the status of a judgment. Fed. R. Bankr. P. 9014(c); *In re Paysour,* 313 B.R. 109, 118 (Bankr. E.D.N.Y. 2004) (the decision "constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure."). Accordingly, GFCC is not correct that the Settlement Hearing was a summary proceeding and the issues beyond the Bankruptcy Court's authority to determine.

**2.    The Bankruptcy Court adhered to all applicable standards for approval of the Stipulation.**

Moreover, contrary to GFCC's assertion, the Settlement Hearing was not narrow in scope and the issues raised at the Settlement Hearing were well within the Bankruptcy Court's mandate to review. The filing of the Stipulation with the Bankruptcy Court, complete with notice of hearing and objection deadline, is clearly a compromise in bankruptcy, subject to Bankruptcy Rule 9019. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the "best interests of the estate."[5] *In re Adelphia Communications Corp.,* 327 B.R. 143, 158 -161 (Bankr. S.D.N.Y. 2005) (*quoting In re Purofied Down Prods. Corp.,* 150 B.R. 519, 523 (S.D.N.Y. 1993)). To determine that a settlement is in the best interests of the estate, the Supreme Court held that the settlement must be "fair and equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968). Such a finding is to be based on "the probabilities of ultimate success should the claim be litigated," and:

> [A]n educated estimate of the complexity, expense, and likely duration of ... litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Id.* at 424-25; *see also Adelphia Communications Corp.,* 327 B.R. at 158; *Purofied Down Products,* 150 B.R. at 523; *Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc. (In re Int'l Distrib. Ctrs., Inc.),* 103 B.R. 420, 422 (S.D.N.Y. 1989) (determination as to whether proposed compromise is fair and equitable requires exercise of informed, independent judgment by court).

In reviewing a settlement, a bankruptcy court need not conduct an exhaustive investigation into the reasonableness of the settlement but must "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983) (internal quotation marks omitted). In addition, it

---

[5] It is not necessary that approval of a stipulation be in the best interests of all parties involved. Case law dictates that approval of a stipulation is confined to the "best interests of the estate." *See In re Adelphia Communications Corp.,* 327 B.R. 143, 158 -161 (Bankr. S.D.N.Y. 2005) (*quoting In re Purofied Down Prods. Corp.,* 150 B.R. 519, 52 3 (S.D.N.Y. 1993)). *Nellis v. Shugrue,* 165 B.R. 115, 123 (S.D.N.Y. 1994) ("A bankruptcy judge's sole and exclusive responsibility is to determine whether a settlement is fair and in the best interests of the estate.").

is not necessary for the court to conduct a "mini-trial" of the facts or the merits underlying the dispute. *Purofied Down Products,* 150 B.R. at 522; *International Distribution Centers,* 103 B.R. at 423.

Rather, the bankruptcy court only need be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment about the settlement. *See Purofied Down Products,* 150 B.R. at 522; *In re Energy Coop., Inc.,* 886 F.2d 921, 924-25 (7th Cir. 1989). In doing so, the court is permitted to rely upon "opinions of the trustee, the parties, and their attorneys." *International Distribution Centers,* 103 B.R. at 423. The decision whether to accept or reject a compromise lies within the sound discretion of the court. *See Purofied Down Products,* 150 B.R. at 522 ("A Bankruptcy Court's decision to approve a settlement should not be overturned unless its decision is manifestly erroneous and a 'clear abuse of discretion.'").

In this case, the Objection required the Bankruptcy Court to review the provisions of the Leases and the Indentures, as well as the TIAs, in order to assess whether GFCC's claims under the TIAs would affect the Trustee's and BAE's claims under the Leases, as GFCC asserted. GFCC's arguments that the Bankruptcy Court should not have made that determination are unavailing. The Second Circuit in *W.T. Grant* did not curtail a bankruptcy court's review during settlement hearings, as GFCC posits, when it stated that "this responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness. '" *In re W.T. Grant Co.,* 699 F.2d at 608 (citations omitted). Instead, the Second Circuit was simply narrowing its scope of review stating,

immediately thereafter in its opinion, "[w]e shall not attempt to deal with every argument advanced by appellants but will concentrate on what seem the most nearly persuasive." *Id.*

In *W.T. Grant*, therefore, the Second Circuit compelled the Bankruptcy Court to evaluate any arguments or objections that would cause approval of the Stipulation to fall below the "lowest point in the range of reasonableness." In approving the Stipulation after hearing GFCC's Objection, the Bankruptcy Court here necessarily found that nothing in GFCC's objection caused the Stipulation to fall below this point. As such, any impact on GFCC's rights by approval of the Stipulation does not constitute reversible error unless this Court finds that the Bankruptcy Court's analysis of the "lowest point in the range of reasonableness" is manifestly erroneous or an abuse of discretion. *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 292 (2d Cir. 1992); *see also In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 426-27 (S.D.N.Y. 1993); *In re Purofied Down Products,* 150 B.R. at 522; *Nellis v. Shugrue,* 165 B.R. 115, 123 (S.D.N.Y. 1994).

GFCC's reliance on the *Orion Pictures Corp.* case is similarly misplaced. GFCC Appeal Brief at 9. In the *Orion Pictures* decision, the Second Circuit ruled that it was an error for the bankruptcy court to decide a disputed factual issue between the parties to a contract in the context of determining whether the debtor or trustee should be permitted to assume that contract. *In re Orion Pictures Corp.,* 4 F.3d 1095, 1098 (2d Cir. 1993). However, a motion to assume is different in kind from a motion to approve a settlement and different standards guide a bankruptcy court's deliberation. The Second Circuit explicitly limits its holding in *Orion Pictures* to motions to assume to avoid the type of argument that GFCC posits before this Court. *See id.* at 1099. In addition, in this instance, it must be recognized that by the Stipulation the parties sought allowance of claims to which GFCC objected. GFCC's objection, as set forth

above, created a contested matter which could not be separated from adjudication of the Stipulation, and even the *Orion Pictures* decision acknowledges these could be addressed concurrently. *See id.*

Moreover, the limitation that GFCC proposes to place on a bankruptcy court's review of the Stipulation flies directly in the face of subsequent pronouncements of this Court. *In re Tower Automotive Inc.,* 241 F.R.D. 162, 166 (S.D.N.Y. 2006) (*citing In re Drexel Burnham Lambert Group, Inc.,* 140 B.R. 347, 349 (S.D.N.Y. 1992) ("the bankruptcy judge is uniquely positioned to consider the equities and reasonableness of a particular compromise, and his evaluations and acceptance of the compromised settlements are entitled to deference on a review.")).

As set forth succinctly by the Bankruptcy Court, "GFCC claims that it, rather than the debt, is entitled to a claim for the tax component of SLV, based on the documents, and that is the crux of its objection." *See,* Dec. at 8. (So Ordered Stipulation, App. Des. at Tab 7). The only way in which the Bankruptcy Court could determine whether GFCC or the debt (the Trustee and BAE) is entitled to the claim, and thus whether approval of the Stipulation was in the best interests of the estate, was to review the provisions of the Operative Documents and the TIAs. The Bankruptcy Court correctly found that SLV (which may contain a tax component) did not have to be reduced by virtue of the TIAs, and was payable to the Trustee and BAE. As a consequence, it approved the Stipulation.[6] GFCC complains that the Bankruptcy Court abrogated all of its rights under the TIAs by so making its decision. It did not. The Bankruptcy Court

---

[6]  The determination by the Bankruptcy Court focused on two key provisions of the TIAs, Sections 5 and 7. The court found that Section 5 "trumped" section 7, because whenever stipulated loss value is paid by Northwest under the Leases, Northwest is freed from making indemnity payments under the TIAs. The arguments with respect to these sections have been fully briefed by Northwest, BAE and GFCC and will not be repeated here. Instead, the Trustee suggests that, even if Section 5 did not trump section 7, the adjustments permitted by Section 7 would not undermine the claims set forth in the Stipulation because, as set forth below, no adjustments can be made that adjust SLV to an amount that would not pay the debt in full.

11

clearly stated:

> As to the procedural posture, GFCC has filed proofs of claim based on its construction of the TIA, and the debtors have not yet objected to the claim, and their time to do so has not yet elapsed. It is not appropriate for the debtors to contend that a decision on this motion will invalidate GFCC's proofs of claim. There may be elements to its claim that do not include those tax losses that are a component of SLV, and thus included in the claim being allowed hereby to others.
>
> In any event, while the decision today may be highly persuasive in the future, the Court cannot deal directly with GFCC's proof of claim, and the parties are free to argue as to the effect of this decision on such proof or proofs of claim. ...

Dec., at 17. (So Ordered Stipulation, App. Des. at Tab 7). The Bankruptcy Court clearly dealt only with the issues put squarely before it by GFCC, while preserving GFCC's rights with respect to its proofs of claims for future adjudication. There was no error here.

Thus, GFCC does not and cannot, show that the Bankruptcy Court's decision on Stipulation was manifestly erroneous and a clear abuse of discretion. To the contrary, the Bankruptcy Court held a hearing on the contested matter, reviewed GFCC's Objection, and reviewed the documents necessary for it to make a determination. It did so consonant with this Circuit's accepted standards for assessing the propriety of a compromise and settlement.

## B.    THE BANKRUPTCY COURT PROPERLY CONSTRUED THE OPERATIVE DOCUMENTS.

### 1.    GFCC is not entitled to payment of damages under the Leases, unless and until the Secured Certificates have been paid in full.

The Bankruptcy Court was correct in its determination that the Stipulation properly respected the rights of the parties under the Operative Documents and was a reasonable settlement of the claims of the Trustee and BAE as a result of the rejection of the Leases. The Trustee's (and BAE's) claims against Northwest consist of a number of component parts including, without limitation, liquidated damages under the Leases, calculated by reference to

SLV and the value of the Aircraft, together with certain inspection and maintenance costs and the fees and expenses of the Trustee and BAE.

There is no dispute that Basic Rent has been assigned to the Trustee as collateral for the repayment of the Secured Certificates. *See* Indenture, Granting Clause (2), at 2 (Reorganized Debtors' Response to Objection, App. Des. at Tab 4, Exhibit B). The rejection of the Leases by Northwest constituted a breach of the Leases as of the Petition Date, giving rise to remedies available under Section 15 of the Leases, including a claim for liquidated damages *in lieu of installments of Basic Rent*[7]. All proceeds under the Lease, including liquidated damages, standing in the place of Basic Rent, compensate the Trustee for the failure to receive installments of Basic Rent under the Leases, and are assigned to the Trustee as collateral for the Secured Certificates.

GFCC contends that it is entitled to a portion of SLV, because SLV includes a component to compensate the owner for lost tax benefits. GFCC Appeal Brief at 19. GFCC further argues that because no security interest has been granted to the Trustee for Excluded Payments[8] under the Indentures, to the extent that they are "embedded" in SLV, they are expressly carved out of the collateral pledged to the Trustee under the Indenture. GFCC Appeal Brief at 20. Any recovery of SLV by the Trustee would, in GFCC's view, contain a portion comprising Excluded Payments and that portion, because it is not pledged as collateral, must be turned over to GFCC.

---

[7] The measure of liquidated damages provided under Section 15 of the Leases is an amount equal to the excess, if any, of the SLV for the Aircraft, over either the aggregate fair market rental value of the Aircraft for the remainder of the term of the Leases (discounted to present value) or the fair market sales value of the Aircraft. See Lease, Section 15(c) at 48.

[8] Excluded Payments, as defined in the Indentures, include, among other things, certain indemnity payments paid or payable by Northwest to or in respect of the Owner Participant or the Owner Trustee in its individual capacity, proceeds of excess insurance maintained by the Owner Participant and all amounts payable under the Tax Indemnity Agreement.

The Trustee does not dispute that it has no lien on Excluded Payments or any assignment of Excluded Rights. But GFCC's suggestion that those items are "embedded" in any damage claim derived from SLV goes too far and is nowhere to be found in the Leases. The fact that SLV may include a component to reimburse the owner for a tax loss if proceeds of remedial action are sufficient, and that an Excluded Right or Excluded Payment may be a payment for a tax, among other things, while the Leases are in full force and effect, simply does not mean, as GFCC suggests, that an Excluded Payment or Excluded Right is embedded in SLV. There are no provisions in the Leases, or any of the Operative Documents for that matter, which apportion the payment of liquidated damages based upon SLV between the Trustee and GFCC. Rather, the documents provide for a clear priority of payment among the parties, such that all amounts due under the Leases as liquidated damages must first be paid to the Trustee until the outstanding obligations due on the Secured Certificates are paid in full, and then to the Owner Trustee on behalf of GFCC. *See*, Indenture §3.03 (payments after event of default to satisfy advances, costs, expenses of the Trustee and the lenders, and all amounts due on the Secured Certificates ahead of the Owner Trustee). (Reorganized Debtors' Response to Objection, App. Des. at Tab 4, Exhibit B).

The waterfall provisions of the Indentures are entirely consistent with the conclusion that all proceeds of remedial action under the Leases are assigned to the Trustee as security for payment of the Secured Certificates, and only after such amounts have been paid in full will amounts become available for distribution to the equity. Following the payment or reimbursement of the Trustee for certain fees and expenses and payment to then existing and prior certificateholders of amounts advanced pursuant to certain indemnification obligations under the Indenture, all payments received and amounts realized by the Trustee after a Lease

Event of Default are distributed to holders of the Secured Certificates in an amount necessary to pay in full the aggregate unpaid principal, interest and certain other amounts then due on all Secured Certificates then outstanding. *See* Indenture, Section 3.03, Clause Third, p. 29. (Reorganized Debtors' Response to Objection, App. Des. at Tab 4, Exhibit B). After these amounts are paid in full, following payment of certain amounts to the Owner Trustee, the Trustee is to distribute so much of such payments or amounts remaining as shall be required to pay in full the "Special Equity Claim" determined as of such date of distribution, to, or as directed by the Owner Trustee. The term "Special Equity Claim" is defined as follows:

> "Special Equity Claim" shall mean, as of any date of determination thereof an amount equal to (A) Stipulated Loss Value for the Aircraft as determined as of the Stipulated Loss Value Date immediately preceding the date of determination thereof, plus (B) an amount equal to the unpaid Basic Rent accrued since the immediately prior Payment Date, together with any portion of Basic Rent in excess of scheduled debt service not theretofore distributed to the Owner Trustee, less (C) the amount of principal and interest on the Secured Certificates included in such Stipulated Loss Value and included in such Basic Rent, if any. Indenture, Section 1.01 at 9. (Reorganized Debtors' Response to Objection, App. Des. at Tab 4, Exhibit B)

The term "Special Equity Claim" is apparently designed to capture components of SLV which have been derived from either (i) the cash return which the equity investor would otherwise expect to realize from the remaining portion of the lease or (ii) amounts reflecting the adverse tax consequences to the equity investor which result from early termination of the transaction. It is clear from the waterfall provisions, however, that even though SLV includes these components, these amounts are only paid to the equity investor to the extent that the recoveries following an event of default, exceed amounts payable on the Secured Certificates. The waterfall provisions belie GFCC's position that SLV should be adjusted, or that the SLV otherwise payable under the Leases should be apportioned between the Trustee and BAE, on one hand, and GFCC on the other. The Indentures demonstrate the true intention of the parties when

structuring the transaction – namely that payment of lease damages following an event of default would be payable <u>first</u> to the Trustee and the holders of the Secured Certificates, and only after such amounts due have been paid in full, would excess recoveries be available for distribution to GFCC.

The Bankruptcy Court's decision recognized that in accordance with the basic structure of the transaction, "stipulated loss value, including the tax component, is part of the package of security assigned to the indenture trustee for the benefit of the debt". Dec. at 12. (So Ordered Stipulation, App. Des. at Tab 7). *See also In re Delta Air Lines, Inc., et al*, 2007 WL 1462207 (Bankr. S.D.N.Y. 2007) ("Indeed it is clear that the entirety of SLV, including the tax component and the owner participant's equity component, constitutes collateral security for the indebtedness owed to the lenders") and *General Foods Credit Corp. v. United Air Lines, Inc. (In re UAL Corp.),* No. 06-4243, 2007 WL 256323, *5 (N.D. Ill. January 22, 2007) ("All cash flows under the lease are assigned as security to the indenture trustee, including those associated with SLV, and a contrary finding is inconsistent with the intent and purpose of the transaction"). This conclusion follows from the finding that damages due and owing on account of failures by Northwest to pay Basic Rent under the Leases, including liquidated damages calculated by reference to SLV, were part of the collateral package pledged to secure payment on the Secured Certificates. It need not be predicated, as GFCC asserts, upon the assumption or the conclusion that GFCC had pledged its rights under the TIAs to secure payment of amounts due to the Trustee and BAE under the Secured Certificates.

**2.     GFCC's proposed adjustment to SLV is not authorized under the Operative Documents.**

The only conceivable rationale for a reduction of the claims of the Trustee and BAE to

accommodate the claim for tax indemnity that is left to GFCC is the downward adjustment of SLV if permitted by the Leases and the TIAs. It is not so permitted, and this argument, too, must fail. GFCC alternatively suggests that if there is no bifurcation of SLV payable as damages under Section 15 of the Lease, the SLV which forms of the basis of the lease rejection damages claim should be adjusted downward. Under this theory, if the Trustee's SLV claim is lower, GFCC's claims under the TIAs will correspondingly be higher.

GFCC asserts that upon the foreclosure of the Aircraft, it suffered a tax loss for which it is entitled to be indemnified by Northwest under the TIAs. GFCC Appeal Brief at 3. Section 7 of the TIA provides that, if any amount is "required to be paid" by Lessee under Section 4 of the TIA, then the owner participant, GFCC, will recompute, among other things, the SLV percentages with respect to the aircraft "to reflect such payment in accordance with the manner in which such values were originally computed, or adjusted pursuant to Section 3 of the Lease . . .". TIA § 7 (emphasis added) (Reorganized Debtors' Response to Objection, App. Des. at Tab 4, Exhibit D). Further, GFCC argues that the very definition of SLV under the Leases contemplates adjustments to SLV. GFCC Appeal Brief at 5.

The problem for GFCC is that such adjustments, however calculated, cannot reduce a full recovery on the Secured Certificates. The Leases, while permitting a reduction in SLV under certain circumstances, in section 3(d)(v) state:

> . . . each payment of Termination Value and Stipulated Loss Value, whether or not adjusted in accordance with this Section 3(d), shall, together with all other amounts (including an amount equal to the Funding Loss Amount, if any, payable by Lessor on the Secured Certificates) payable simultaneously by Lessee pursuant to this Lease, in each case be, under any circumstances and in any event, in an amount at least sufficient to pay in full, on the date on which such amount of Rent is due, any payments then required to be made on account of the principal of, Funding Loss Amount, if any, and interest on the Secured Certificates. Lease, §3(d)(v) (Reorganized Debtors' Response to

Objection, App. Des. at Tab 4, Exhibit A.)

In addition, the Leases themselves define SLV as an amount that may be adjusted, "but subject always to the provisions of Section 3(d)(v)" thereof. Likewise, the provisions contained in the Participation Agreements pursuant to which the owner participant agrees to make recalculations of the Rent, Termination Value and SLV state that it will do so to give effect to Section 3 of the Leases. Participation Agreement, §8(aa) (Reorganized Debtors' Response to Objection, App. Des. at Tab 4, Exhibit C). In other words, there is no circumstance in which SLV can be adjusted below what is required to repay in full the Secured Certificates.

Because the Leases have been rejected and the Aircraft sold at foreclosure, there is no further recovery on the Secured Certificates other than distributions on account of the claims as provided under the Plan. At this point, there is no assurance that even a claim based upon the full SLV (prior to the adjustments sought by GFCC) will be sufficient to pay the Secured Certificates in full. GFCC's attempts to reduce SLV, in advance of full payment of the Secured Certificates, is not permitted under the Operative Documents. Accordingly, there is no basis to reduce the claims of the Trustee and BAE, and the Bankruptcy Court was correct in approving the Stipulation.

### 3. The Trustee's Claim is calculated as of the Petition Date.

Because no adjustments to SLV were made prior to the Petition Date, SLV, as of the Petition Date, governs the rights of the parties. *See In re UAL Corporation, et al*, 346 B.R. 783, 790 (Bankr. N.D. Ill. 2006) (creditor entitled to calculate its claim as of the date of the bankruptcy filing pursuant to §§ 365(g) and 502(b) of the Bankruptcy Code); 11 U.S.C. §§365(g) (lease rejection claim constitutes a breach immediately before the date of the filing of the petition) and 502(b) (court to determine claims as of the date of the filing of the petition). In this

case, the claims of the Trustee and BAE against Northwest arise as a result of the rejection of the Leases, and constitute a general unsecured claim as of the Petition Date. In that regard, the calculus for the claim is based upon the stated SLV existing as of the Petition Date, and therefore cannot be affected by any belated adjustment requested by GFCC.

As a practical matter, there should be no adjustments to SLV for a lease that has been rejected and effectively terminated. In *UAL* it was found that the adjustment provision "contemplates that the Lease remains in effect; it adjusts SLV only after an actual payment under the TIA, which would only take place while the equipment notes are outstanding." *UAL*, 346 B.R. at 789. The same should pertain here. Because the Leases have been rejected, no further payments under the Leases are to be made by Northwest post-rejection which would be applied against the Secured Certificates, other than the distributions on account of allowed claims calculated as of the Petition Date. Accordingly, any adjustments or recalculations of SLV after the termination of the Leases simply serve no purpose, as they cannot be tied to any ongoing payments under the Leases.

**4.     GFCC's distinction between its "equity investment" and its "indemnification rights" is without merit.**

GFCC also argues that the structure of leveraged lease financing provides that "indemnity claims are on a *pari passu* basis with those of the Lender and are not subordinated." GFCC Appeal Brief at 4 (citing James C. Ahlstrom, et al., "The Economics of Leveraged Leasing," in Ian Shrank & Arnold G. Gough Jr., eds., *Equipment Leasing-Leveraged Leasing* 4th ed. §29:5.2[A] (hereinafter referred to as *Leveraged Leasing*)). However, as the Leveraged Leasing treatise explains more thoroughly, the *pari passu* treatment applies only to the out of pocket

losses suffered by an owner participant as they relate to all other unsecured indemnity claims against the lessee. *Leveraged Leasing*, §29:5.2[A].

In a desperate effort to liken its TIA claim to "out-of-pocket losses", GFCC asserts that even though its equity investment may be subordinated to the interests of the Trustee and BAE, this is not the case with respect to its TIA claim. GFCC Appeal Brief at 21. However, the TIA claim does not represent "out-of-pocket losses" of GFCC. The TIA claim is designed to compensate GFCC for loss of the anticipated future tax benefits which it would have been entitled to had it retained ownership of the Aircraft and had Northwest continued to perform under the Leases. Expectancy damages are not out-of-pocket losses. It is unequivocally clear that the structure of leveraged lease financing provides for "the owner participant's investment .. to be fully subordinated to that of the Lender." *Leveraged Leasing,* §29:5.2[A]. GFCC's investment in this transaction was a cash payment, for which it expected to receive an economic return comprised of the entitlement to the tax benefits of ownership of the Aircraft, and the residual value of the Aircraft at the conclusion of the transaction. GFCC cites no basis to distinguish one benefit from another, or to elevate the tax benefits to a position superior to that of the debt to which it is clearly subordinated under the Indentures. Further, GFCC failed to raise this issue in the Bankruptcy Court, and accordingly, GFCC is prohibited from raising this issue on appeal for the first time.

## VII. CONCLUSION

For all the foregoing reasons, the Trustee respectfully requests that this Court affirm the

Bankruptcy Court's approval of the Stipulation.

Dated:  October 18, 2007

/s/ Shmuel Vasser
EDWARDS ANGELL PALMER & DODGE LLP
Shmuel Vasser (SV 7400)
750 Lexington Avenue
New York, NY 10022
212.308.4411
svasser@eapdlaw.com

And

EDWARDS ANGELL PALMER & DODGE LLP
Richard Hiersteiner
Jeanne P. Darcey
Amy A. Zuccarello
111 Huntington Avenue
Boston, MA 02199
617.239.0100
rhiersteiner@eapdlaw.com
jdarcey@eapdlaw.com
azuccarello@eapdlaw.com

*Counsel to U.S. Bank National Association, as Trustee*