**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

IN RE: NORTHWEST AIRLINES          :

                                            :   **Case No. 1:07-cv-07940 (SAS)**

    **GENERAL FOODS CREDIT CORP.,**
    **Appellant**                :
    **v.**                         :
    **NORTHWEST AIRLINES, INC.,**    :
    **Appellee**

                                              :
-------------------------------------------------------------X

<u>**REPLY BRIEF OF APPELLANT GENERAL FOODS CREDIT CORP.**</u>

Andrew H. Schapiro
David F. Abbott
MAYER BROWN LLP
1675 Broadway
New York, NY  10019
212-506-2500

Stephen Sanders
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL  60606
312-701-8464
*Counsel for Appellant*
*General Foods Credit Corp.*

October 29, 2007

# TABLE OF CONTENTS

**Page**

I.    NORTHWEST MISREPRESENTS THE BASIC DIFFERENCES BETWEEN
      SETTLEMENT AND ADJUDICATION OF A BANKRUPTCY CLAIM...................... 1

      A.    The Minimal Standards for a Settlement Hearing Do Not Apply to the
            Actual Adjudication of a Claim. ........................................................................... 1

      B.    Northwest Was Not Required to Adjudicate Its Own Claim in Another
            Creditor's Settlement Hearing. ............................................................................. 5

      C.    Northwest Fails to Distinguish Governing Case Law in Any Relevant
            Way. ....................................................................................................................... 6

      D.    The Bankruptcy Court Improperly Indicated Its Decision Would Preclude
            GFCC's Ability to Fairly Litigate and Seek to Recover On Its Separate
            and Independent Claim. ......................................................................................... 7

II.   NORTHWEST CONTINUES TO RELY ON CLEARLY ERRONEOUS
      INTERPRETATIONS OF THE OPERATIVE DOCUMENTS. ...................................... 9

      A.    Northwest Is Not Relieved of GFCC's TIA Claim, Because Northwest
            Has Not Paid SLV in Accordance With the Operative Documents..................... 10

      B.    Northwest Relies on an Illusory Distinction Between GFCC's TIA Claim
            and the Tax Component of SLV. ........................................................................... 13

      C.    GFCC's TIA Claim Enjoys the Same Priority as BAE's Claim.......................... 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Butner v. United States,*
    440 U.S. 48 (1979)................................................................................ 12

*Copeland v. Merrill Lynch & Co., Inc.,*
    47 F.3d 1415 (5th Cir. 1995) (emphasis added) ................................ 1, 9

*Iridium Operating LLC, In re,*
    478 F.3d 452 (2d Cir. 2007) ................................................................ 6

*Orion Pictures Corp., In re,*
    4 F.3d 1095 (2d Cir. 1993) ............................................................... 3, 9

*Protective Comm. for Indep. Stockholders of TMT Trailer*
    *Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) ........................... 2, 3, 6, 7

*Rhead, In re,*
    179 B.R. 169 (Bankr. D. Ariz. 1995)................................................. 12

*River Valley Fitness One, L.P., In re,*
    2005 WL 3116557 (Bankr. D.N.H. 2005) .......................................... 2

*Saylor v. Lindsley,*
    456 F.2d 896 (2d Cir. 1972 ............................................................. 2, 3

*Terwilliger v. Terwilliger,*
    206 F.3d 240 (2d Cir. 2000) ............................................................. 12

*Travelers Cas. & Surety Co. v. Pacific Gas & Elec. Co.,*
    127 S.Ct. 1199 (2007)....................................................................... 12

*W.T. Grant & Co., In re,*
    699 F.2d 599 (2d Cir. 1983),
    *cert. denied sub nom.*, 464 U.S. 822 (1983) ................................. 2, 4, 7

*Zale Corp. In re,*
    62 F.3d 746 (5th Cir. 1995) ............................................................. 1, 3

## <u>Rules</u>

Fed. R. Bankr. P. 3001(f)............................................................................ 4

## <u>Other Authorities</u>

10 Collier on Bankruptcy ¶ 9019.01 ............................................................ 6

## TABLE OF AUTHORITIES

**Page**

Macan, William A., IV & Michael G. Robinson, "Tax Aspects of Equipment Leasing,"
in Ian Shrank & Arnold G. Gough Jr., eds., *Equipment Leasing-Leveraged
Leasing* 4th ed. § 4:6.1 .................................................................................................. 11

Macan, William A., IV, Allen & Overy, "Review of U.S. Tax Issues That Drive the Deals"
(white paper, April 2002) at 19 ..................................................................................... 11

Shrank, Ian, "Documentation," in *Leveraged Leasing* § 29:5.2 in Ian Shrank & Arnold G. Gough
Jr., eds., Equipment Leasing-Leveraged Leasing 4th ed. (hereinafter, "Leveraged Leasing") §
4:6.1 .............................................................................................................................. 17

I.     **NORTHWEST MISREPRESENTS THE BASIC DIFFERENCES BETWEEN SETTLEMENT AND ADJUDICATION OF A BANKRUPTCY CLAIM.**

Instead of simply reviewing whether Northwest's proposed Stipulation with BAE cleared the legal threshold for a settlement, the bankruptcy court fully adjudicated the merits of a pending contract dispute between Northwest and a different creditor, GFCC.  In an oral decision with no clear findings about its own authority or the legal standard governing its decision, the bankruptcy court purported to issue a conclusive interpretation of the contract – an interpretation which, it indicated, all but foreclosed GFCC's separate and independent claim against Northwest.

The bankruptcy court abused its discretion and wrongfully prejudiced GFCC's rights.  In their responses, Northwest, BAE, and U.S. Bank attempt to explain away the bankruptcy court's errors.  Their arguments do not withstand serious analysis.

A.     **The Minimal Standards for a Settlement Hearing Do Not Apply to the Actual Adjudication of a Claim.**

Northwest's position is that because BAE's claim and GFCC's claim involved a "common legal issue," it was entitled to both *settle* BAE's claim and *litigate* GFCC's claim in the same proceeding.  "The essential point," it says, "is that GFCC had a full opportunity to place its position before the court, *regardless of which claim went first*."  Northwest Resp. at 30 (emphasis added).

Northwest overreaches, and it ignores the basic principle that "[e]xamining whether a particular settlement is fair or equitable and in the best interest of the estate and creditors is a *different inquiry*, driven by *different policies*, than litigation of the actual claim."  *In re Zale Corp.*, 62 F.3d 746, 766 n.60 (5th Cir. 1995) (citing *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1423 (5th Cir. 1995)).  Since the "very purpose of a compromise is to avoid the trial

of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the

settlement hearing into a trial or a rehearsal of the trial…. [T]he court is concerned with the

likelihood of success or failure and ought, therefore, to avoid any actual determination of the

merits." *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972) (Friendly, C.J) (citation and

internal quotation marks omitted).[1]

The difference in the two settings is critically important to a litigant's due process rights.

In a settlement hearing, the parties advancing a compromise need only persuade the bankruptcy

court that their agreement is "fair and equitable," *Protective Comm. for Indep. Stockholders of

TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), and does not fall "below the

lowest point in the range of reasonableness," *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir.

1983) (Friendly, J.) (citation omitted), *cert. denied sub nom.*, 464 U.S. 822 (1983).  By contrast,

in a contested proceeding where the contractual basis of a creditor's claim is actually being

litigated, the court must find, by a preponderance of the evidence, that its interpretation of

disputed contract provisions is *correct as a matter of law*.  *See, e.g.*, *In re River Valley Fitness

One, L.P.*, 2005 WL 3116557, *6 (Bankr. D.N.H. 2005).

In this appeal, Northwest contends that in considering Northwest's settlement with BAE,

the bankruptcy court was required to decide the proper interpretation of a contract – here, the

Tax Indemnity Agreement ("TIA") – as a matter of law.  Specifically, according to Northwest,

the bankruptcy court was required "to analyze whether Section 5(c) or Section 7 of the TIA was

controlling; had to consider all of the transaction documents as a whole to properly interpret the

agreements under New York law; had to ascertain the plain meaning of the agreements; and had

---

[1]  These cases were discussed in GFCC's opening brief in this appeal.  None of the respondents
addressed them.

2

to evaluate each of GFCC's arguments against interpretation of the agreements" according to Northwest's preferred reading. Northwest Resp. at 32.

But such an ambitious adjudication conducted in the guise of a settlement hearing cannot possibly be squared with Second Circuit law that "the court must not turn the settlement hearing into a trial or a rehearsal of the trial" and that it should "avoid any actual determination of the merits." *Saylor*, 456 F.2d at 904. Nor does Northwest explain how all this was proper given that the bankruptcy court (1) issued an oral decision with no specific findings about the scope of its authority or the nature of the proceeding, and (2) set forth no specific findings explaining how its approval of the Stipulation met the "fair and equitable" standard.[2]

The bankruptcy court's error was not that it apprised itself of the facts of the TIA dispute – that much was necessary for the court to make "a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer*, 309 U.S. at 424. Where the bankruptcy court went off course was in purporting to *resolve the merits* of that dispute. *See Saylor*, 456 F.2d at 904 (in weighing a settlement, the bankruptcy court "must not turn the settlement hearing into a trial or a rehearsal of the trial," avoiding "any actual determination of the merits"). The respondents elide the obvious point that the standards in a settlement hearing are relaxed precisely because the

---

[2] Northwest attempts to mock GFCC's observation in its opening brief that a settlement proceeding is not the appropriate setting for what the bankruptcy court described as its "painstaking analysis" of the TIA and other operative documents. "Northwest is not aware of any case in which a court was reversed on appeal for doing too thorough a job." Northwest Resp. 28.

Northwest is, of course, being facetious. GFCC's observation went not to the bankruptcy court's diligence, but to the scope of its mandate in a settlement proceeding. There are, obviously, any number of decisions where a bankruptcy court has been reversed on appeal for exceeding its authority. *See, e.g.*, *In re Zale*, 62 F.3d at 766 (reversing decision below because, among other things, the bankruptcy court failed to conduct an adversary proceeding before approving a preliminary injunction); *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993) (vacating approval of a motion to assume because the bankruptcy court improperly decided a disputed contract issue in a summary proceeding).

parties *have chosen to forego their right to litigate* the claim being compromised.  Here, of course, GFCC never agreed to forego its right to litigate its own separate and independent claim. Indeed, since Northwest had not objected to GFCC's claim, the proof of claim GFCC had previously filed was prima facie evidence of the claim's validity and amount.  Fed. R. Bankr. P. 3001(f).

Thus, what the bankruptcy court should have done was to evaluate whether the proposed settlement was in Northwest's best interests, in light of the fact that GFCC's separate and independent claim was pending and would be litigated on the merits in its own proceeding.

Contrary to the implication respondents attempt to create by noting that its settlement hearing was a contested proceeding, an objection to a settlement *does not* change the nature and scope of the bankruptcy court's review: "In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge … is not to decide the numerous questions of law and fact raised by appellants [*i.e.*, the objecting parties in the courts below] but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness.'"  *W.T. Grant*, 699 F.2d at 608 (bracketed alteration in original, internal quotation marks omitted).

Quite simply, after the bankruptcy court's decision in this case, there appears to be nothing left for the bankruptcy court to do when it considers GFCC's claim.  *See* Part I.D., *infra*. That is precisely the outcome Northwest sought to engineer.  But it also illustrates why this Court should restore the proceedings to their proper boundaries.  This Court should either (1) vacate approval of the Stipulation and remand for a settlement hearing that accords with Supreme Court and Second Circuit law, or (2) allow the Northwest-BAE settlement to go

forward, but expressly clarify that the Stipulation shall have no preclusive effect on GFCC's ability to fully adjudicate its own claim in its own hearing under proper procedure.

### B.    Northwest Was Not Required to Adjudicate Its Own Claim in Another Creditor's Settlement Hearing.

Northwest urges this Court to proceed under the mistaken premise that GFCC was obligated to mount a full-scale, trial-like defense of its own claim at the Northwest-BAE settlement hearing. This is, to put it charitably, a creative interpretation of bankruptcy procedure. In its Objection, GFCC simply pointed out what the operative documents make clear: "that if Northwest is 'required' to make a payment to GFCC pursuant to the TIAs (which is in fact the case here), SLV shall be reduced to reflect the Debtors' obligation to make such payment." GFCC Objection at 7 (discussing TIA § 7).

In response, Northwest declared that:

Although GFCC's objection states repeatedly that section 7 of the TIAs is the controlling provision, *section 5(c) of the TIAs, in fact, is the provision that controls*. Section 5(c) excuses Northwest from indemnifying the loss of tax benefits to the extent that the losses result from an event that causes Northwest to pay SLV under the lease.

Northwest Resp. to Objection at 3 (emphasis added).

Then at the hearing, Northwest advanced its view that the TIA "is really written backwards. Okay? It appears to state a broad indemnification, but it's really only intended to cover a very narrow set of events." Tr. at 21. Northwest now argues that because GFCC declined its invitation to submit to a trial on its own claim in the course of someone else's settlement hearing, GFCC somehow waived its rights. This is obviously incorrect.

GFCC has never disputed that it had the *right* to take discovery or call witnesses at the settlement hearing. GFCC did not, because there was no need to do so. The settlement hearing

was a contested proceeding on the Northwest-BAE settlement, not a contested proceeding on GFCC's claim. As GFCC repeatedly emphasized in its filings with the bankruptcy court and at the hearing, GFCC's Objection sought only to prevent the settlement from prejudicing GFCC's own substantive and procedural rights.

The fact that the bankruptcy court, urged on by Northwest, chose to exceed the limited scope of a settlement hearing and reach the merits of disputed issues cannot mean, in retrospect, that GFCC slept on its rights and should have come prepared for full-scale adjudication on a claim that was not before the court. It means only that the bankruptcy court failed to conduct a proper settlement proceeding.

### C.     Northwest Fails to Distinguish Governing Case Law in Any Relevant Way.

Northwest purports to distinguish several cases GFCC cited in its opening brief, but its attempts to spin these cases are unavailing.

Northwest begins by questioning whether a leading Supreme Court case discussed by GFCC, *TMT Trailer*, is even "applicable" in this case because it "was decided under the Bankruptcy Act, not the current Bankruptcy Code." Northwest Resp. at 31. Northwest never tries to explain why this fact is relevant; in fact, it is not.

*TMT Trailer* remains widely recognized as the leading case on the standard for bankruptcy court review of settlements. *See*, *e.g.*, 10 Collier on Bankruptcy ¶ 9019.01 ("There are numerous opinions setting out the standards to be applied in determining whether the court should approve a proffered settlement or compromise of a controversy. The courts take their guidance from the Supreme Court's case of [*TMT Trailer*].") Indeed, the "best interests" test that Northwest quotes one page earlier, citing *In re Iridium Operating LLC*, 478 F.3d 452, 462

(2d Cir. 2007), actually is derived from *TMT Trailer*.  *See id*. ("Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in this Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry*.").

Northwest's attempts to distinguish other cases suffer from similar flaws.  For example, pointing to *W.T. Grant*, Northwest claims: "rather than acting in a limited, passive capacity, as GFCC asserts is appropriate, the circuit court in *W.T. Grant* took an active role in fully evaluating the proposed compromise and the objections thereto, and made findings on the merits as necessary in fulfillment of its duties."  Northwest Resp. at 34.  Whatever point Northwest seeks to make is, at best, opaque.  The court in *W.T. Grant* was a court of appeals, whose role is to evaluate and decide questions of law, not a bankruptcy court.

In any case, the court in *W.T. Grant* made unambiguously clear what standard applies to review of settlements – including settlements where, as in that case, objections have been made: "In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge, *and ours upon review*, is not to decide the numerous questions of law and fact raised by appellants [*i.e.*, the objecting parties] but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness.'"  699 F.2d at 608 (bracketed alteration in original, internal quotation marks omitted).

### D.     The Bankruptcy Court Improperly Indicated Its Decision Would Preclude GFCC's Ability to Fairly Litigate and Seek to Recover On Its Separate and Independent Claim.

Once the parties were at the settlement hearing, Northwest made unmistakably clear that it intended to use the bankruptcy court's approval of its settlement as "collateral estoppel," Tr. at 64, against GFCC's separate and independent claim.  Referring to the stipulation as a "technical

matter," its counsel asserted that "we are certainly going to argue that an order approving the stip forecloses a payment to [GFCC] under the TIA.  I just want to be clear about that."  Tr. at 66.

In this appeal, Northwest appears to have changed its tune.  It now says that the bankruptcy court "did not decide the TIA claim," it merely decided "the very objection that GFCC placed in front of it."  Northwest Resp. at 28.  Eight pages later, however, Northwest enthusiastically agrees that the bankruptcy court's decision had the "practical effect" of denying GFCC's TIA claim.  *Id.* at 36.  (Northwest even adds its view that the bankruptcy court's decision in this case also "effectively disposes of" the rights of a *different* Owner Participant under a "wholly different leveraged lease."  *Id.*)

The bankruptcy court made clear that its decision would preclude GFCC's ability to fairly litigate and seek to recover on its separate and independent claim, either against Northwest or BAE.  *First*, as GFCC noted in its opening brief in this appeal, the bankruptcy judge failed to correct Northwest's counsel when he advanced the blatantly erroneous theory that the bankruptcy court's decision would be "collateral estoppel" on GFCC's separate and independent claim.  GFCC Opening Brf. at 12.

*Second*, the bankruptcy court said that any future adjudication of GFCC's claim would be limited to "elements . . . that *do not include those tax losses that are a component of SLV*" – clearly indicating the court considered GFCC's claim under the TIAs to be precluded in any future adjudication.  Dec. at 16.

*Finally*, in denying an amendment to the Stipulation proposed by GFCC that would have recognized GFCC's right under the Indenture to recover any part of its TIA claim that was paid to another party, the bankruptcy court said such an amendment would be "inappropriate, especially if there were some implication that GFCC might have a claim against any other party

to these proceedings for amounts received under the stipulation with the debtors." *Id.* at 17. The court added it "cannot conceive on what legal theory there might be such a claim." *Id.* In light of the fact the operative documents plainly require the Indenture Trustee to disgorge and pay over any payments it receives that actually belong to GFCC (Indenture § 3.05(b); Lease § 3(e)), the only possible interpretation of the bankruptcy court's ruling on this point is that the court intended its approval of the settlement to preclude GFCC from bringing any such claim.

Since proceedings in a settlement hearing are entitled to no preclusive effect whatsoever, *Merrill Lynch*, 47 F.3d at 1422-23; *In re Orion Pictures*, 4 F.3d at 1095, 1099 (2d Cir. 1993), this Court should clarify that regardless of whether the Northwest-BAE settlement goes forward, GFCC's right to fully litigate its own claim has not been prejudiced.

## II. NORTHWEST CONTINUES TO RELY ON CLEARLY ERRONEOUS INTERPRETATIONS OF THE OPERATIVE DOCUMENTS.

Northwest's entire argument on the substance of GFCC's Objection – as well as on the merits of GFCC's separate and independent claim – hinges on one provision of the TIA. Specifically, its argument hinges on two words in one provision of the TIA. Section 5(c) relieves Northwest's obligation to indemnify GFCC's tax losses if Northwest "has paid" SLV. TIA § 5(c). Northwest purports that in its settlement, it *will pay* SLV to BAE. The bankruptcy court endorsed Northwest's notion that, by paying a compromised amount in bankruptcy to BAE, Northwest will have met the TIA's terms for satisfying Northwest's separate obligations to GFCC. The bankruptcy court made this determination not simply as a basis for the Northwest-BAE settlement to go forward, but as the legally correct interpretation of the operative documents. *See* Dec. at 16.

9

The bankruptcy court's decision – and respondents' position on appeal – is based on fundamental misreadings of the operative documents, as well as misapplications of bankruptcy law and leveraged leasing principles.

> **A.    Northwest Is Not Relieved of GFCC's TIA Claim, Because Northwest Has Not Paid SLV in Accordance With the Operative Documents.**

Northwest will not pay SLV as that term is defined and understood in the operative documents. Rather, Northwest will pay an amount that it and BAE have *declared* to be SLV *solely for purposes of their settlement*.

The bankruptcy court ruled, in effect, that *allowance of a claim* means, in the context of bankruptcy, *paid in full*. *See* Dec. at 13 (finding that the word "pays…must be construed in such a manner as to comport with the meaning of payment in the context of bankruptcy…. There is rarely likely to be full payment of claims in bankruptcy….") (citation omitted). This court should correct the bankruptcy court's misunderstanding. Because payment of a compromised amount of SLV in bankruptcy does not satisfy the requirement of Section 5(c), Section 5(c) has no application here. Northwest has in no sense been relieved of the obligations it undertook as a party to the TIA.

*First*, the TIA's plain terms unmistakably provide that Northwest's duty to indemnify GFCC is not altered by the fact that Northwest may find itself in bankruptcy. Section 15 of the TIA provides: "Subject to [provisions not relevant in this case], Lessee's and Owner Participant's respective payment obligations under this Agreement *shall be absolute and unconditional* and shall not be affected by any circumstances including, without limitation, the circumstances described in Section 18 of the Lease." TIA § 15 (emphasis added). The circumstances in Section 18 of the Lease include "…(iii) *any insolvency, bankruptcy,*

*reorganization* or similar case or proceedings *by or against Lessee*." Lease § 18 (emphasis added). Thus, on its face, the TIA directly refutes the bankruptcy court's finding that the TIA "expressly contemplated" that Northwest's obligations would mean something different "in the context of bankruptcy." Dec. at 13. Likewise, it refutes Northwest's notion that Section 5(c) was intended to "create a huge exception to the indemnification, and that huge exception is anything that is an event of default." Tr. at 22. Moreover, contrary to the bankruptcy court's finding that "the TIA here does not require payment in cash," Dec. at 14, the TIA *expressly* requires that "[a]ll payments to be made to Owner Participant by Lessee pursuant to this Agreement shall be made in United States dollars." TIA § 9.

 *Second*, the leading treatise on leveraged leasing confirms that only a *full payment* of SLV relieves the lessee of its TIA obligation. The lessee's TIA obligation is excused upon "the occurrence of an event giving rise to a lessee obligation to pay termination value or stipulated loss value, at least to the extent that *such values properly take into account the tax consequences* of the event (*and actually are paid*)." William A. Macan IV & Michael G. Robinson, "Tax Aspects of Equipment Leasing," in Ian Shrank & Arnold G. Gough Jr., eds., *Equipment Leasing-Leveraged Leasing* 4th ed. (hereinafter, "*Leveraged Leasing*") § 4:6.1 (emphasis added). *See also* William A. Macan IV, Allen & Overy, "Review of U.S. Tax Issues That Drive the Deals" (white paper, April 2002) at 19 (explaining that a TIA gives the Owner Participant "the right to receive a TIA payment for the adverse tax consequences *unless and until [termination value]/SLV has been **paid in full***" (emphasis added)).[3]

 *Third*, the bankruptcy court's notion that the meaning of a critical contract term necessarily means something different when the debtor is in bankruptcy flies in the face of well

---

[3] A copy of this paper was attached as Appendix A to GFCC's Objection in the bankruptcy court.

settled principles of contract and bankruptcy law. The Supreme Court recently reaffirmed that interpretation of a contract in the context of bankruptcy must be the same as the interpretation of that contract outside of bankruptcy. *See Travelers Cas. & Surety Co. v. Pacific Gas & Elec. Co.*, 127 S.Ct. 1199, 1205 (2007) (property interests such as claims in bankruptcy "are created and defined by state law, and [u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding") (internal quotation marks omitted, bracketed alteration in original). *See also Butner v. United States*, 440 U.S. 48, 54-55 (1979) (uniform treatment of property interests serves to reduce uncertainty and "prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy'") (citation and internal quotation marks omitted); *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) ("a court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case").

 *Fourth*, the error of Northwest's argument that "allowed" means "paid in full" can be illustrated by what such a notion would mean where a lender to a debtor has a non-debtor guaranty. If allowance of the lender's claim should be deemed payment in full of the loan, the lender should not be able to recover from the non-debtor guarantor – which would be absurd, because the inability of the debtor to pay is why guarantees are obtained in the first place. *See*, *e.g.*, *In re Rhead*, 179 B.R. 169, 172 (Bankr. D. Ariz. 1995) ("Upon default of the principal on the underlying debt, liability on the guarantee becomes fixed."). Similarly, GFCC never agreed to give up its separate and independent TIA claim against Northwest unless Northwest had in fact paid SLV in cash, in full.

Northwest and BAE's argument that Section 5(c) somehow "takes precedence" over Section 7, *see*, *e.g.*, BAE Resp. at 8, is incorrect, but more important, it is beside the point. Since Northwest will not pay SLV in accordance with the operative documents, Section 5(c) has no application. Thus, it follows that the source of Northwest's protection against double liability is (as GFCC explained from the beginning in its Objection, at 7) Section 7, which requires that SLV be reduced in recognition of GFCC's TIA claim. Because Northwest refuses to honor this provision, its settlement proposes to overpay BAE by approximately $30 million.[4]

### B.     Northwest Relies on an Illusory Distinction Between GFCC's TIA Claim and the Tax Component of SLV.

In its opening brief, GFCC explained that the Northwest-BAE settlement could not eliminate GFCC's right to payment under the TIAs, because the TIAs were never pledged as collateral for BAE's benefit. GFCC Opening Brf. at 20-22. Northwest now concedes that this is correct. *See* Northwest Resp. at 23. Northwest and the other respondents also acknowledge that as a typical feature of leveraged leasing, stipulated loss value ("SLV") includes the Owner Participant's expected tax benefits.

Barring anything to the contrary in the operative documents (which, in this case, there is not), it follows that the SLV payment that Northwest proposes to give BAE must be reduced by the amount Northwest owes GFCC under the TIA. This requirement to adjust SLV, found in Section 7 of the TIA, is what protects Northwest against the possibility of double payment.

---

[4] It is important to note that regardless of what amounts Northwest ultimately pays to GFCC and BAE, the outcome will have no adverse effect on the employees of Northwest or on Northwest itself, which is now out of bankruptcy. The only issue is how the bankruptcy distributions Northwest will make ultimately are divided among the unsecured creditors.

Rejecting all of the above, Northwest insists there is a crucial difference between (1) GFCC's TIA claim, which it concedes was not mortgaged, and (2) the tax component of SLV, which it insists *was* mortgaged.

Northwest's counsel attempted to articulate this position at the bankruptcy hearing. First, he conceded that "everyone agrees that amounts due under the TIA are not pledged" as collateral. Tr. at 17. He also acknowledged that "excluded payments" – that is, the portion of rent under the leases which is not assigned as collateral – "include not only payments owed to GFCC under the TIAs, but also … include all payments of supplemental rent by lessee *in respect of any amounts payable* under the tax indemnity agreements." *Id*. (emphasis added). Nonetheless, Northwest's counsel opined,

> Amounts payable under the tax indemnity agreements is [sic] duplicative of the tax-embedded component in SLV. All right? They're equivalent, they're duplicative, but they're not the same thing.

*Id*.

Northwest made the same puzzling argument in its response: "The claims under the TIAs are excluded from the Owner Trustee's pledges. But SLV, which is always expressed as a unitary number, unquestionably is pledged." Northwest Resp. at 25. Northwest cited no provision of the Indenture – or any other operative document – for the crucial premise that the tax component of SLV is not carved out from SLV as an excluded payment.

Similarly, BAE concedes that payments due under the TIA are "not collateral for the Lender." BAE Resp. at 11. Yet BAE also claims that "that portion of SLV that was calculated by reference to the equity's tax losses … is pledged to the Indenture Trustee to compensate the debt in the case of default." Like Northwest, BAE does not point to any provision of the Indenture that supports this notion. Instead, it relies on the murky explanation that the TIA and

the tax component of SLV "arise under different agreements, with different counterparties, under different circumstances." *Id*.

None of this, in fact, makes any sense. As Northwest itself put it, the leveraged leases in this case are based on "a constellation of *interlocking agreements* detailing the *entire transaction*." Northwest Resp. at 5 (emphasis added). Among those agreements, there is only one Indenture, and in that Indenture, there is only one Granting Clause. Nowhere does that Granting Clause set forth any distinction between the tax component of SLV and the Owner Participant's TIA claim. (And, of course, as GFCC explained in its opening brief (at 19-20), the Owner Participant is not even a party to the Indenture.)

The Granting Clause pledges the Owner Trustee's estate "*other than Excluded Rights* and *subject to the rights* of the Owner Trustee *and the Owner Participant* contained therein." Indenture at 2 (emphasis added). Among the rights pledged are rent payments under the Lease, "*excluding any Excluded Payments*." *Id*. (emphasis added). Excluded Rights are defined as "all payments of, and all rights with respect to, Excluded Payments." *Id*. at 7.

Among the Excluded Payments are "[1] all payments required to be made under the Tax Indemnity Agreement by Lessee **and** [2] all payments of Supplemental Rent by Lessee *in respect of any amounts payable under the Tax Indemnity Agreement*." *Id*. at 6 (emphasis added). The latter clause clearly and necessarily refers to the tax component of SLV. Certainly respondents provide no alternative explanation.

Northwest's brief, which says it is relying entirely on the plain language of the operative documents, never engages with this critical language. Yet without doing so, it is impossible to fully understand the core issue in any security agreement: what was pledged as collateral for the Lender, and what was not pledged. Northwest's brief never identifies any specific language of

the Indenture to support its bare assertion that GFCC's right to receive the tax component of SLV is not an Excluded Right and thus was mortgaged away.

Once it is understood that GFCC retains its right to receive the tax component of SLV, there remains no support whatever for the contract interpretation theory to which Northwest clings: that by operation of Section 5(c), its partial SLV payment to BAE wipes out GFCC's tax indemnity claim, and that any amount in respect of that claim may only be recovered through the waterfall.

U.S. Bank, as the Indenture Trustee, speculates in its response that "amounts reflecting the adverse tax consequences to the equity investor" are "*apparently*" intended to be encompassed in the "Special Equity Claim" GFCC is allowed under the Indenture waterfall after the secured certificates have been fully paid.  U.S. Bank Resp. at 15 (emphasis added).  U.S. Bank's speculation misses the mark.  As GFCC has explained, supplemental rent payments made by Northwest "in respect of any amounts payable under the Tax Indemnity Agreement" are Excluded Payments and are carved out of the collateral.  Indenture at 6.  Thus, they could not be part of the Special Equity Claim and would not flow through the waterfall.

In short, Section 7 of the TIAs require that SLV be reduced to account for GFCC's tax indemnity claim.  If SLV is not reduced, BAE will be liable to turn over to GFCC the tax portion of SLV as an Excluded Payment.  Indenture § 3.05(b); Lease § 3(e)).  The bankruptcy court erred in holding otherwise.

## C.    GFCC's TIA Claim Enjoys the Same Priority as BAE's Claim.

Northwest continues to insist erroneously that GFCC's TIA claim is somehow a junior claim to BAE's claim for the debt.  Northwest Resp. at 22 (GFCC's recovery for lost tax benefits may come "only after payment to senior claims under the indenture waterfall.").  As GFCC

explained in its opening brief in this appeal, Northwest seeks to obfuscate the difference between

GFCC's upfront investment of equity (any recovery on which *would* flow through the waterfall),

and the right to tax indemnification for which it bargained under a separate contract (which is a

component of SLV and is, by contract, directly owing to the Owner Participant). GFCC Opening

Brf. at 22-23. The leading treatise on leveraged leasing confirms that

> although the owner participant's *investment* is meant to be fully subordinated to
> that of the lender, both owner participants and lenders are passive investors in the
> leased asset. Consequently, with respect to *out-of-pocket losses* suffered by the
> owner participant or owner trustee, they should be on a pari passu [*i.e.*, equal in
> priority] basis as far as unsecured indemnity claims against the lessee are
> concerned.

Ian Shrank, "Documentation," in *Leveraged Leasing* § 29:5.2.

## CONCLUSION

This Court should vacate the bankruptcy court's approval of the Northwest-BAE

Stipulation so that the bankruptcy court may conduct a settlement hearing under the proper legal

standard for approval of a compromise, one where the court will not seek to adjudicate the merits

of GFCC's separate and independent claim. In the alternative, this Court should enter an order

specifying that the bankruptcy court's decision and its interpretations of the operative documents

shall have no preclusive effect and constitute no authority in any subsequent proceeding on

GFCC's claim.

Dated: October 29, 2007                     By:     <u>s/ Andrew H. Schapiro</u>
                                                    Andrew H. Schapiro
                                                    David F. Abbott
                                                    MAYER BROWN LLP
                                                    1675 Broadway
                                                    New York, NY  10019
                                                    212-506-2500

                                                    Stephen Sanders
                                                    MAYER BROWN LLP
                                                    71 S. Wacker Drive
                                                    Chicago, IL  60606
                                                    312-701-8464

                                                    *Counsel for Appellant*
                                                    *General Foods Credit Corp.*

## <u>CERTIFICATE OF SERVICE</u>

Stephen Sanders, an attorney, hereby certifies that on the 29th day of October 2007, he caused to be served, via email, a true and correct copy of the **BRIEF OF  APPELLANT GENERAL FOODS CREDIT CORP**. upon Bruce R. Zirinsky, Esq. (bruce.zirinsky@cwt.com), Barry J. Dichter, Esq. (barry.dichter@cwt.com), Nathan A. Haynes, Esq. (nathan.haynes@cwt.com), Mark C. Ellenberg, Esq. (mark.ellenberg@cwt.com), Ken Coleman, Esq. (ken.coleman@allenovery.com), and Jeanne P. Darcey, Esq. (jdarcey@eapdlaw.com).

Dated: October 29, 2007                                    <u>/s/ Stephen Sanders</u>

                                                                          Stephen Sanders